## MICHIGAN TRUST CO. *v.* BAKER.

1. PERPETUITIES—STATUTE AGAINST SUSPENDING POWER OF ALIENATION RELATES SOLELY TO REAL PROPERTY.

   The statute (3 Comp. Laws 1915, § 11533) forbidding suspension of power of alienation beyond two lives in being relates solely to real property.

2. SAME—RULE AGAINST PERPETUITIES AND STATUTE AGAINST SUSPENDING POWER OF ALIENATION DISTINGUISHED.

   The common-law rule against perpetuities requires vesting of estates within a period, while the statute against suspending power of alienation prohibits inalienability beyond a period; the rule is a restraint only upon future

On remainder void for remoteness, effect on particular estate, see note in 3 L. R. A. (N. S.) 639.

On limitation of estate upon probate of will as a violation of the rule against perpetuities, see note in 10 L. R. A. (N. S.) 564.

interests and has no concern with present interests, while the statute reaches vested estates in real property but shorn of alienability.

3. SAME—WILLS—VESTING TITLE WITH MANDATE TO SELL FIXES PROPERTY AS PERSONALTY.

Where a will vested the title to real estate in a trustee with power and mandate to sell, the character of the property thereby became fixed as personal property, and whether sold or not is of no moment, since it is to be done, and the doctrine of equitable conversion governs and considers it as actually performed.

4. SAME—STATUTE AGAINST SUSPENDING POWER OF ALIENATION.

The provisions of a will suspending the power of alienation during the life of testatrix's husband only and then vesting title in a trustee with power and mandate to sell, did not violate the statute prohibiting suspension of power of alienation, although the will further provided that a son should have the use of one-half of the avails thereof during his life and then it should go to his child or children, if any, girls at age of 25 years, and boys at age of 30 years.

5. SAME—TEST AS TO WHETHER RULE AGAINST PERPETUITIES APPLIES.

The test of whether the rule against perpetuities applies or not is the remoteness of time when, if ever, the estate devised by a will vests, and the court must be able to say, to avoid the rule, that to a certainty the estate will vest within a life or lives in being and 21 years, and this vesting must be found to have been discernible at the date of the death of the testatrix.

6. SAME — POSSIBILITY OF POSTPONING VESTING OF TITLE MORE THAN 21 YEARS AFTER LIVES IN BEING VIOLATES RULE.

Provisions of a will postponing the vesting of the share of one of testatrix's sons, after his death, until his daughters, if any, reached the age of 25 years, and his sons, if any, reached the age of 30 years, making it possible that the estate would not vest within 21 years after the son's death, violated the rule against perpetuities.

7. SAME—POSSIBLE UNION OF ESTATE WITH ONE VOID UNDER RULE RENDERS IT VOID ALSO.

Where the will provided that the share of another son, upon the happening or non-happening of certain events,

might be united with that of the first son mentioned, which was void because in violation of the rule against perpetuities, the second bequest also became void by reason thereof.

8. SAME—HEIRLOOMS—PROVIDING ALTERNATIVES AT DEATH OF LIVES IN BEING DOES NOT VIOLATE RULE.

Where the use of heirlooms was given to testatrix's husband and son during their lives, and at their death title was to vest in certain persons, alternatives being provided to meet possible contingencies, there was no violation of the rule against perpetuities; the husband and son both being persons in being at the death of testatrix.

Appeal from Ottawa; Cross (Orien S.), J. Submitted October 12, 1923. (Docket No. 102.) Decided February 1, 1924.

Bill by the Michigan Trust Company, administrator *de bonis non cum testamento annexo,* of the estate of Mathilde F. Howlett, deceased, against Looe Baker and others for the construction of the will. From the decree rendered certain defendants appeal. Modified and affirmed.

*Knappen, Uhl & Bryant,* for appellants.

*Connolly & Henderson,* for appellees.

WIEST, J.    March 13, 1911, Mathilde F. Howlett made her will.    She died June 18, 1913, leaving her husband, Nelson R. Howlett, and two sons, Stuart and Looe Baker, surviving her.    The will was duly admitted to probate August 5, 1913, and Nelson R. Howlett appointed administrator *cum testamento annexo,* March 28, 1920, Mr. Howlett died.    Stuart Baker died in New Mexico, April 8, 1915, leaving a wife but no issue.    Plaintiff, as administrator *de bonis non cum testamento annexo* of the estate, filed the bill herein to obtain construction of the will.    The will gave Nelson R. Howlett the use and control of the estate

for life, unless he remarried, with right to spend the income and so much of the principal as he might desire for his support and comfort, and with power to sell and give conveyance, but by precatory words invoked specified financial aid be given Stuart and Looe.

The principal question is whether the following provisions of the will, in connection with what has been mentioned, suspended power of alienation beyond two lives in being contrary to 3 Comp. Laws 1915, § 11533, and restricted the vesting of the estate beyond lives in being and 21 years, in violation of the common-law rule against perpetuities:

"Upon the death or remarriage of my husband, Nelson R. Howlett, I give and bequeath all my estate then remaining in his hands to the Michigan Trust Company of Grand Rapids, Michigan, in trust, to convert the same into money, except as to family heirlooms, and dispose thereof, as well as of said heirlooms, as follows:     *     *     *

"My will is that my son Stuart shall have the use of one-half of my estate not otherwise disposed of by this will and as Mr. Howlett shall be willing, while he lives, but the title shall remain in Mr. Howlett or in said Trust Company.

"If my said son shall have lawful child or children of his body who shall survive him, his share of my estate shall go to such child or children, girls at age of twenty-five years and boys at thirty years and not before.

"If my son Stuart shall die without lawful issue, his share of my estate shall go five thousand dollars ($5,000) to my son Looe Baker in fee, and the remainder for his life and at his death to his lawful children, if any, and if not I give the same to my niece Marie Grampp before named, if living or to her child or children, if any, and if she shall leave no child or children, the same shall go one-half to amt. of ($6,000) six thousand dollars to the children of Looe Baker, Sr., brother of my late husband William C. Baker, Jr., share alike and the remainder to the children of my brother Paul Grampp, if any, and if not, then all to children of Looe Baker, Sr. above.

"The other half of my estate that shall come to said Trust Company and not otherwise disposed of by this will, shall be disposed of as follows: The income thereof shall be paid quarterly to my son Looe Baker for his life, and after his death to his lawful child or children, if he shall leave any, and if not, then five thousand dollars ($5,000) shall be paid to his widow, if he leave one, and if not, the whole shall be paid to his brother Stuart for his life, if living, and at his death to his lawful children, if any, otherwise to be disposed of the same as the half provided for my son Stuart in the preceding paragraph. The principal of his share, in addition to the income, may be used to provide for Looe's necessities, the same as provided for Stuart in the preceding paragraph."

In the circuit the above provisions were adjudged to be in violation of the statute mentioned and also the common-law rule against perpetuities. We find no violation of the statute but do find the provisions offend the common-law rule against perpetuities. The statute forbidding suspension of power of alienation beyond two lives in being relates solely to real property. This will gave the husband a life estate and suspended power of alienation by him except in a limited way. At the death of the life tenant the will vested title to the real property in the trustee, with not only full power of alienation but with mandate to convert the same into money. The suspension of power of alienation ended at the death of the life tenant. At the most here was suspension of power of alienation during the life of but one person in being at the creation of the estate.

The vesting of title in the trustee with mandate to alienate takes the case out of the holding in *Grand Rapids Trust Co.* v. *Herbst,* 220 Mich. 321. The common-law rule against perpetuities has no bearing upon the question just decided.

It must be kept in mind that, while the rule against perpetuities applies to future interests in both real and personal property, it has nothing to do with the

statutory prohibition against suspension of power of alienation. The rule requires vesting of estates within a period, while the statute prohibits inalienability beyond a period; the rule is a restraint only upon future interests and has no concern with present interests; the statute reaches vested estates in real property but shorn of alienability. With title to the real estate vested in the trustee with power and mandate to sell, the character of the avails thereof is fixed by the will as personal property.

At the close of the life estate given the husband the will required conversion of the real property into money. Whether this has been accomplished in fact or not is of no moment for, if not done, it is to be done and the doctrine of equitable conversion governs and considers it as actually performed. The test of whether the rule against perpetuities applies or not is the remoteness of time when, if ever, the estate vests. The court must be able to say, to avoid the rule, that to a certainty the estate will vest within 21 years after the death of Stuart and Looe, and this vesting must be found to have been discernible at the date of the death of the testatrix. At that time Stuart and Looe were both living but had no children. Certainty as to time the estate will vest must be apparent unaided by events subsequent to the date the will became operative. The dead hand can control contingent devolution toward ultimate vesting only within a fixed period.

The application of the rule is well stated in 21 R. C. L. pp. 289, 290:

"The test therefore by which to ascertain whether a limitation over is void for remoteness is very simple. It does not depend on the character or nature of the contingency or event on which it is to take effect, for these may be varied to any extent. But it turns on the single question, whether the prescribed contingency or event may not arise until after the

time allowed by law within which the gift over must take effect.    *    *    *    It is not sufficient that the future estate may by possibility become vested within the period allowed by the rule against perpetuities or even that it will probably become vested in such period.    If it may possibly happen beyond the established time limits or if there is left any room for uncertainty or doubt on the point the limitation is void.    If a future limitation may not by possibility take effect within the prescribed period it cannot be made good by subsequent events."

The very first contingency for vesting Stuart's so-called share was in violation of the rule against perpetuities.    If Stuart had had a daughter and died when she was 3 years of age the estate would not vest in her within 21 years after her father's death because the will postpones vesting until the daughter should reach the age of 25 years.    If Stuart had had a son and died when the son was 7 years of age the estate would not vest in the son within 21 years after his father's death.    This possibility existing at the death of testatrix voids the provision in the will with reference to Stuart's so-called share.    Does this infirmity void Looe's so-called share?    It does.    While it is possible to divide among two the income and *corpus* of an estate and make the parts so independent of each other as to save one from an infirmity found in the other, yet to accomplish this the will must not be so conditioned that under certain contingencies the division ceases and a merger takes place and the estate vests as a whole.    This will provides for a possible union of the two shares by reason of the happening or non-happening of certain events.    The shares were not made independent at the creation of the division with right to remain so under all circumstances and, therefore, they must now stand or fall together.    The circuit judge was right in holding the above mentioned provisions invalid.

Paragraph 11, subdivision (*f*), of the will provides:

"(*f*) The Baker silver tea set shall go to my son Stuart for his use only for his life, at his death it is to go to his child or children, if any, if none, to his brother Looe, if living, if not to his child or children, if any, and if none, to the said Marie Grampp.    If said Marie Grampp shall not be living or does not leave child or children, when the Baker tea set shall reach her or them, it shall go to Alice and William Baker, children of Looe Baker, Sr., before named, or their heirs."    *    *    *

This and subdivisions *g, h, i, j* and *k*, of like character, and all relating to heirlooms, were held void in the circuit.    Life use of the Baker tea set was granted the husband followed by life use thereof to Stuart. The husband and Stuart were persons in being at the death of testatrix.    As stated, the rule against perpetuities permits postponement of the vesting of ownership during a life or lives in being, so the only question is whether the will, under circumstances existing at the death of testatrix, vests ownership in 21 years after the death of Stuart.    At Stuart's death the will vested ownership at once.    Here we find no provision postponing the vesting of ownership at all, but only designation of who should become such owner at Stuart's death, an alternative being provided to meet possible contingencies.

What we have said applies with equal force to all the provisions relating to heirlooms.    Such provisions are valid.

The decree in the circuit will be modified to accord with this opinion and, so modified, affirmed, with costs against appealing defendants.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.