MOFFIT v SEDERLUND

Docket No. 75879. Submitted October 3, 1984, at Lansing.—Decided August 19, 1985. Leave to appeal applied for.

F. Russel Moffit, as trustee of the Brookfield Royalty Trust, brought an action in Eaton Circuit Court against Roger and Darlene Sederlund, seeking to compel the defendants to pay to

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Appeal and Error §§ 105-113.
See the annotations in the ALR3d/4th Quick Index under Dismissal or Discontinuance.

[2] Am Jur 2d, Appeal and Error §§ 352 et seq.
See the annotations in the ALR3d/4th Quick Index under Appeal and Error.

[3] Am Jur 2d, Appeal and Error §§ 839-845.
Power of trial court, on remand for further proceedings, to change prior fact findings as to matter not passed upon by appellate court, without receiving further evidence. 19 ALR3d 502.

[4] Am Jur 2d, Fraud and Deceit §§ 12 et seq.
See the annotations in the ALR3d/4th Quick Index under Fraud and Deceit.

[5] Am Jur 2d, Contracts §§ 482 et seq.
See the annotations in the ALR3d/4th Quick Index under Contracts.

[6] Am Jur 2d, Contracts §§ 102, 103.
See the annotations in the ALR3d/4th Quick Index under Contracts.

[7] Am Jur 2d, Deeds §§ 89 et seq.
Enforceability of voluntary promise of additional compensation because of unforseen difficulties in performance of existing contract. 85 ALR3d 259.

[8] Am Jur 2d, Deeds §§ 265 et seq.
Grant, lease, exception, or reservation of "oil, gas, and other minerals, or the like," as including coal or metallic ores. 59 ALR3d 1146.

[9] Am Jur 2d, Perpetuities and Restraints on Alienation §§ 6 et seq.
Production on one tract as extending term on other tract, where one mineral deed conveys oil or gas in separate tracts for as long as oil or gas is produced. 9 ALR4th 1121.

[10, 11] Am Jur 2d, Securities Regulation-State §§ 7 et seq.
What securities are exempt from registration under Section 402(a)of the Uniform Securities Act. 84 ALR3d 575.

him, pursuant to a royalty pooling deed executed by defendants in 1971, one half of all the oil and gas royalties they had received as a result of oil production on their land. Defendants brought a counterclaim and filed a third-party action against Moffit individually, the royalty pool, C. B. and D. J. Acker, and Amoco Production Company, seeking to have the royalty pooling deed rescinded and other relief. Following a nonjury trial, Richard M. Shuster, J., held the deed to be valid and enforceable and ordered the payment of royalties to the pooling trust in accordance with the provisions of the deed upon presentation by plaintiff of opinions of title and the certificate of a designated title examiner showing that as of May 15, 1971, the royalty pool had good and marketable title, pursuant to pooling deeds, of not less than 1,000 mineral acres in the area encompassed by the pooling trust. Defendants appealed. *Held:*

1. The trial court did not clearly err in its denial of defendants' motion to dismiss based upon the failure of plaintiff to show "good and merchantable" title in at least 1,000 acres on May 15, 1971, as required in the deed for the deed to become effective, since the defendants had failed to raise prior to trial the issue of whether title held by the trustee of the pool had to be "good and merchantable". Since the trial court could have treated that issue as having been waived by defendants, defendants are in no position to complain about the fact that the court left that issue to be decided in a post-judgment proceeding.

2. The question of the adequacy of the proofs at the post-judgment proceedings is not properly before the Court of Appeals, since the question of the adequacy of those proofs has not yet been decided by the trial court.

3. The trial court did not clearly err in its finding that the execution of the deed was not induced by fraud.

4. The reciprocal conditional promises in the royalty pool deeds as to the distribution of royalties if oil was found on any of the royalty pool properties was adequate consideration to support the giving of the royalty pooling deed by defendants.

5. The royalty pooling deed neither constituted an unlawful restraint on trade nor violated the rule against perpetuities.

6. The royalty pooling deed was a security within the meaning of that term as used in the Uniform Securities Act. Accordingly the failure to comply with the filing provisions of that act meant that the execution of this deed was in violation of the act.

7. Since the Uniform Securities Act clearly bars the bringing of an action to enforce a contractual right which is in violation

of the act, plaintiff was barred from relief on his claim. While the trial court properly denied defendants' plea for relief, the court erred in granting relief to plaintiff.

Affirmed in part and reversed in part.

1. TRIAL — MOTION TO DISMISS — APPEAL — CLEAR ERROR — PRE-TRIAL CONFERENCES.

A trial court's determination not to grant a motion to dismiss will not be overturned on appeal unless clearly erroneous; a trial court's refusal to grant a motion to dismiss which was based upon an issue not raised at the pretrial conference nor incorporated in the pretrial summary cannot be said to be clearly erroneous, since under such circumstances the court could have treated the issue upon which the motion to dismiss was based as having been waived (CGR 1963, 301.3, 504.2).

2. APPEAL — JURISDICTION — TRIAL COURTS.

A timely appeal vests jurisdiction of a case in the Court of Appeals and divests the trial court of any further general jurisdiction to conduct further proceedings in the case during the pendency of the appeal; a remand by the Court of Appeals of a matter to the trial court for the specific purpose of determining whether execution of judgment should be stayed during pendency of the appeal does not thereby vest the trial court with general jurisdiction to consider issues outside the scope of the jurisdiction conferred by the order of remand (GCR 1963, 802.1).

3. APPEAL — FINDINGS OF FACT — NONJURY TRIAL — CLEAR ERROR.

Findings of fact by a trial court sitting without a jury cannot be set aside on appeal unless clearly erroneous (MCR 2.613[c]).

4. FRAUD — ELEMENTS OF ACTION.

The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury.

5. CONTRACTS — DEFENSES — FRAUD.

Mere failure to read a written agreement does not require rescission of the contract unless other facts indicate fraud, artifice or deception.

6. CONTRACTS — ADEQUACY OF CONSIDERATION.

Courts, generally, will not inquire into the adequacy of considera-

tion; rescission of a contract for inadequacy of consideration will not be ordered unless the inadequacy is so gross as to shock the conscience of the court.

7. DEEDS — ADEQUACY OF CONSIDERATION — OIL ROYALTY POOLS.

The exchange of conditional promises relative to the distribution of oil royalties by persons in an oil royalty pool constitutes adequate consideration to support the enforcement of an oil royalty pooling deed.

8. DEEDS — RESTRAINT ON ALIENATION — OIL ROYALTY POOLS.

An oil royalty pooling deed which does not confer an estate in fee simple in the royalty pool trustee but rather conveys to the trustee only legal title to an undivided one-half interest in the oil and gas produced from the land does not constitute a common law restraint on alienation merely because there are restrictions on the trustee's power to alienate the interest conveyed to him, since such restrictions are necessary to give effect to the purpose of the trust and are not unreasonable.

9. DEEDS — RULE AGAINST PERPETUITIES — OIL ROYALTY POOLS.

An oil royalty pooling deed which conveys an undivided interest in the oil and gas produced on the land but which reserves to the grantor the possibility of reverter at the end of ten years if oil and gas are not produced on the property or when production ceased if production occurred within the ten-year period does not violate the rule against perpetuities because there exists a vested possibility of reverter.

10. SECURITIES REGULATION — OIL ROYALTY POOLS — UNIFORM SECURITIES ACT.

An oil royalty pooling deed which conveys an undivided interest in any oil or gas produced as part of an arrangement to share the royalties by those joining the pool is a security within the meaning of the Uniform Securities Act before its amendment in 1975 and 1978 (MCL 451.801[1]; MSA 19.776[401][1]).

11. SECURITIES REGULATION — OIL ROYALTY POOLS — UNIFORM SECURITIES ACT.

The Uniform Securities Act bars any action seeking to enforce any contract right arising out of the sale of any security in violation of the act; accordingly, a party is barred from seeking enforcement of an oil royalty pooling agreement where the transfer of the oil royalty pooling deeds creating the oil royalty arrangement was in violation of the provisions of the Uniform Securities Act (MCL 451.810[f]; MSA 19.776[410][f]).

*Fortino, Plaxton & Moskal* (by *John J. Moskal),* for plaintiff.

*William E. Tapovatz,* for defendants.

Before: CYNAR, P.J., and M. J. KELLY and R. L. EVANS,* JJ.

R. L. EVANS, JR. In this action, plaintiff, trustee of the Brookfield Royalty Pool, sought to obtain an order compelling defendants to pay him half of all royalties they received as the result of oil production on certain property, in accordance with the terms of a royalty pooling deed executed by defendants on April 27, 1971. By a counterclaim and a third-party complaint, defendants sought to have the royalty pooling deed rescinded and to obtain other relief. After a nonjury trial, the trial court found for plaintiff, and an order was entered granting the relief plaintiff requested on the condition that plaintiff produce within 90 days of the entry of judgment opinions and certificates of a title examiner showing that, as of May 15, 1971, the royalty pool had good and merchantable title pursuant to royalty pooling deeds to not less than 1,000 mineral acres in Brookfield Township and certain sections of Eaton Township in Eaton County. Defendants appeal as of right.

I

Defendants argue that the trial court erred by declining to grant their motion to dismiss plaintiff's complaint at the close of plaintiff's proofs. Defendants point to the following provision of the

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

royalty pooling deed:

"Unless royalty pooling agreements similar to this agreement have been executed and delivered to the Trustee on or before the ____15____ of ___May___ 1971 covering a total of not less than ___1,000___ acres, within the limits of the lands described in Schedule 'A', the Grantors shall be entitled to the return of this pooling agreement unless the date last above set forth shall have been extended in writing signed by Grantors hereto."

Defendants argue that this provision of the deed required acquisition by the trustee of "good and merchantable" title to the amount of property specified in the provision and that plaintiff failed to show in his case in chief that the deeds that he obtained amounted to "good and merchantable" title. Resolution of this motion to dismiss was controlled by GCR 1963, 504.2, and the trial court's determination not to grant defendant's motion will not be overturned on appeal unless clearly erroneous. See, for example, *Warren v June's Mobile Home Village & Sales, Inc.,* 66 Mich App 386, 389; 239 NW2d 380 (1976).

As the previously quoted provision of the deed shows, the deed contains no express requirement of "good and merchantable" title. Moreover, after a pretrial conference, a pretrial summary was entered and served on the parties' attorneys pursuant to GCR 1963, 301.3. That subrule provided in part:

"The judge shall prepare, file, and cause to be served upon the attorneys of record, at least 10 days in advance of trial, a summary of the results of the pretrial conference specifically covering each of the items herein

stated. The summary of results controls the subsequent course of the action unless modified at or before trial to prevent manifest injustice."

The pretrial summary stated the issues to be litigated at trial; none related to the sufficiency of the trustee's title. Defendants made no attempt to have the pretrial summary modified, and first raised this issue in their motion to dismiss. When plaintiff's attorney expressed surprise, the trial court did not hold that defendants had waived this issue, as GCR 1963, 301.3 authorized him to hold, but instead established a mechanism for plaintiff to show "good and merchantable" title in post-judgment proceedings. On this record, we cannot say that the trial court's resolution of defendants' motion to dismiss was clearly erroneous or presents manifest injustice.

Defendants attack the sufficiency of plaintiff's post-judgment showing of "good and merchantable" title. We decline to address this issue, because defendants failed to raise it in the trial court at a time when the trial court had jurisdiction to resolve it. After defendants filed a claim of appeal, jurisdiction over this case vested in this Court pursuant to GCR 1963, 802.1. The trial court had no jurisdiction to conduct proceedings in the case. *People v George,* 399 Mich 638; 250 NW2d 491 (1977). Defendants only raised this issue in the trial court when the case was on remand to the trial court for the limited purpose of determining whether execution of the judgment should be stayed. The trial court properly declined to address the issue at that time, on the ground that the issue was outside of the scope of the jurisdiction conferred by the order remanding the case. Under these circumstances, we have nothing relating to this issue to review.

## II

Findings of fact by a trial judge sitting without jury cannot be set aside on appeal unless clearly erroneous. See MCR 2.613(C) (formerly GCR 1963, 517.1). Defendants ask us to set aside the trial judge's finding that their execution of the royalty pooling deed was not induced by fraud. In *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976), the Court, quoting *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919), explained:

"The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowlege of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainly, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

Generally, a failure to read a written contract document does not require rescission of the contract unless other facts indicate fraud, artifice, or deception. See, for example, *Vandendries v General Motors Corp,* 130 Mich App 195, 200; 343 NW2d 4 (1983). Failure to read a contract document provides a ground for rescission only where the failure was not induced by carelessness alone, but instead was induced by some stratagem, trick, or artifice by the parties seeking to enforce the contract. *Otto Baedeker & Associates, Inc v Hamtramck State Bank,* 257 Mich 435, 441; 241 NW 249 (1932). Here, defendants rely on alleged state-

ments by a promoter of the pool, C. B. Acker, to
show fraud. Some of these alleged statements are
inconsistent with the language of the royalty pool-
ing deed. A clause of the deed states that it ex-
presses the entire agreement between the parties
and that no person has any authority to make
written or oral modifications or representations
concerning the subject matter of the deed. Defen-
dant Roger Sederlund admitted that he executed
the deed without reading it completely. Defen-
dants assert fraud, but do not assert that any
fraud induced them to execute the deed without
reading it completely.

Defendants claim that C. B. Acker falsely told
them that there was a good prospect that oil would
be discovered in their area of their township. Any
such statement by Acker was, however, demonstr-
ably true, since oil was in fact subsequently discov-
ered on defendant's property.

Defendants also claim that C. B. Acker told
them that they would benefit from participating in
the pool. Defendants claim that they have not
benefited because oil was discovered on their land
but not on land of other participants in the pool.
However, the testimony of defendant Roger Seder-
lund at trial showed that defendant understood
from Acker's statements that participation in the
pool would mainly be beneficial if oil was discov-
ered on the land of other participants rather than
on defendants' land. The royalty pool was a device
to spread among participants the benefits of any
discovery of oil or gas and the risk that no oil or
gas would be discovered. Its nature was amply
disclosed by the deed. Nothing revealed by the
testimony could reasonable be construed as a war-
ranty by Acker that oil would be discovered on the
land of other participants and not on defendants'
land. No false representation by Acker or reliance

by defendants is apparent in connection with this allegation.

Defendants also claim that C. B. Acker falsely told them that they were conveying only 1/16 of their minerals by the royalty pooling deed. Under the terms of the deed, defendants technically transferred an undivided 1/2 interest in any oil and gas produced from their land, but they retained the exclusive right to lease their land for oil and gas purposes. Defendants agreed not to execute an oil or gas mining lease for the land without reserving at least 1/8 of the production as royalty. Because the pool would be entitled to only 1/2 the production reserved as royalty, any statement by Acker that defendants were transferring 1/16 of their oil and gas to the pool was not false.

Defendants also claim that C. B. Acker falsely told them that participation in the pool would be limited only to their immediate neighbors. The testimony of defendant Roger Sederlund shows, however, that Acker correctly told defendants that certain neighbors were participating in the pool, but made no representation that participation was limited to those neighbors. The term "neighbors", allegedly used by Acker, was broad enough to include residents of defendants' township and an adjoining township. The geographic extent of the pool and minimum acreage requirements were clearly disclosed in the deed. Moreover Roger Sederlund testified that he did not take the royalty pool seriously and did not care who was a member of the pool until oil was discovered on his land. No false statement by Acker or reliance by defendants is apparent in connection with this allegation.

Defendants also claim that C. B. Acker falsely told them that neither he nor his associates would gain anything from his promotional efforts. In fact, the deed reserved an undivided 1/4 of the

interest in the pool for C. B. Acker and D. J. Acker. This reservation, however, was expressly stated in the deed defendants executed. Moreover, defendant Roger Sederlund testified that he had not believed the alleged denial by Acker of any gain from promotional efforts and had not particularly cared what gain, if any, Acker would receive. No reliance by defendants on the alleged false allegation is apparent.

On this record, we cannot say that the trial court's findings as to fraud were clearly erroneous.

### III

Defendants attack the adequacy of the consideration for the execution of the royalty pooling deed. Courts will not ordinarily inquire into the adequacy of consideration and rescission of the contract for inadequacy of consideration will not be ordered unless the inadequacy was so gross as to shock the conscience of the court. See, for example, *Rose v Lurvey,* 40 Mich App 230, 234; 198 NW2d 839 (1972). It is well-settled that a conditional promise may form adequate consideration. See Restatement Contracts, 2d, § 76, p 192, 1 Corbin, Contracts, § 148, P 645 and 1 Williston Contracts, § 103, pp 394-395.

The contract here was an exchange of conditional promises. In return for a share of any royalties defendant would receive if oil or gas was found on their land, defendants received the right to share in royalties from any oil or gas discovered on other land included in the pool. At the time these promises were made, no one could know on which lands, if any, oil or gas would be discovered. Defendants now contend that they have contributed more to the pool than they have gained, but matters could easily have turned out differently.

Defendants chose to enter into a speculative transaction and cannot now complain about the outcome of their speculation. The consideration here cannot be characterized as grossly inadequate and does not shock our consciences.

## IV

Defendants argue that the royalty pooling deed was invalid, because it contained a restraint on alienation. Defendants rely on the following clauses of the deed:

"If oil or gas is not found on some tract in which royalty has been conveyed to the Trustee in the territory covered by Schedule 'A', within ten years from the date hereof, all rights conveyed hereby shall revert to the Grantors, their heirs or assigns; but, in the event oil or gas is produced on any such tract during the said ten year period, the rights granted hereby shall continue so long as oil or gas is produced on any of the pooled tracts. * * * The Trustee shall have no right to sell or otherwise dispose of any part of the royalty interest conveyed to him but shall simply hold the legal title to the same for the use and benefit of the several Grantors and Third Party as hereinafter provided."

Michigan's statutory rule against restraints on alienation, 1948 CL 554.14 *et seq.,* was repealed by 1949 PA 38. See *Lantis v Cook,* 342 Mich 347, 354; 69 NW2d 849 (1955). Some subsequent decisions imply that Michigan still follows a common-law rule prohibiting *unreasonable* restraints on alienation. See *Pellerito v Weber,* 22 Mich App 242, 245; 177 NW2d 236 (1970), *Lemon v Nicolai,* 33 Mich App 646, 649; 190 NW2d 549 (1971), and *Nichols v Ann Arbor Federal Savings & Loan Ass'n,* 73 Mich App 163, 168; 250 NW2d 804 (1977).

In *Sloman v Cutler,* 258 Mich 372, 374-375; 242 NW 735 (1932), the Court explained:

"If one's interest in property is absolute, as a fee simple, restriction on his right of alienation is void as repugnant to the grant. This is because violation of the restriction affects no interest but his own. *Mandlebaum v McDonell,* 29 Mich 78 (18 Am Rep 61) [1874]. Where the grantor retains an interest in the property granted, such as reversionary interest to him as lessor, the interest generally will support the imposing of a restriction on alienation."

The royalty pooling deed did not confer an estate in fee simply on the trustee. Instead, defendants, as grantors, conveyed to the trustee legal title to an undivided 1/2 interest in oil and gas produced from their land, but they retained various interests in the property, including an equitable interest corresponding to the legal interest conveyed to the trustee plus all the other incidents of ownership of the land. Moreover, the estate conveyed to the trustee was limited in time. The restrictions on the trustee's power to alienate the interest conveyed to him were necessary to effectuate the purpose of the trust and were not unreasonable.

Defendants' reliance on *Carlson v Tioga Holding Co,* 72 NW2d 236 (ND, 1955), is misplaced. The finding of the court in that case that the royalty pooling deed contained an illegal restraint on alienation was based on a North Dakota statute which stated a broader rule against restraints on alienation than Michigan courts have followed since the repeal of the applicable Michigan statute.

We note, moreover, that if any unreasonable restraint on alienation were to be found, the remedy would be to declare the restraining clause unen-

forceable, not to declare the conveyance unenforceable. *See Lemon v Nicholai, supra,* p 649, and *Nichols v Ann Arbor Federal Savings & Loan Ass'n, supra,* p 168.

Defendants also argue that the royalty pooling deed violated the rule against perpetuities and was therefore invalid. The common-law rule against perpetuities has been adopted in Michigan by statute. MCL 554.51; MSA 26.49(1). The rule is violated if, at the time the instrument creating a future estate comes into operation, it is not certain that the estate will either vest or fail to vest within 21 years of the death of a person named in the instrument. *Michigan Trust Co v Baker,* 226 Mich 72, 77-78; 196 NW 976 (1924); *Gardner v City National Bank & Trust Co,* 267 Mich 270, 284; 255 NW 587 (1934). The rule is not violated, however, by a conveyance reserving the possibility of a reverter in the grantor, because such a possibility is vested. See Simes & Smith, Law of Future Interests (2d ed), § 1239, pp 146-147. A vested possibility of reverter arises when the holder of a vested estate conveys a vested lesser estate to another. Simes & Smith, § 82, pp 65-66. Defendants here therefore retain vested possibilities of reverter ten years from the date of execution of the deed, if no oil or gas was produced on the land within the ten-year period, or when production ceased, if production occurred within the ten-year period. No violation of the rule against perpetuities was presented. See *Froelich v United Royalty Co,* 178 Kan 503; 290 P2d 93 (1955),*on reh* 179 Kan 652; 297 P2d 1106 (1956), and *McGinnis v McGinnis,* 391 P2d 927, 930-931 (Wyo, 1964).

## V

Defendants argue that the royalty pooling deed

was a security subject to the requirements of the Uniform Securities Act, MCL 451,501 *et seq.;* MSA 19.776(101) *et seq.,* and that the deed should be set aside and penalties authorized by the act should be imposed because the security was not registered as required by MCL 451.701; MSA 19.776(301). Because the deed was executed on April 27, 1971, our analysis of this issue will be based on the Uniform Securities Act as it existed in 1971, although the act has been extensively amended since then by 1975 PA 31 and 1978 PA 481.

MCL 451.01(l); MSA 19.776(401)(l) provided;

" 'Security' means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; *certificate of interest or participation in an oil, gas or mining titles or lease or in payments out of production under such a title or lease;* or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or particpation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 'Security' does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or some other specified period." (Emphases added.)

To determine whether a particular transaction is subject to the Uniform Securities Act, a court must look to the substance of the transaction and the real intent and purpose of the parties. *People v Blankenship,* 305 Mich 79, 86; 8 NW2d 919 (1943); *People v Breckenridge,* 81 Mich App 6, 14; 263 NW2d 922 (1978); *Prince v Heritage Oil Co.* 109 Mich App 189, 197; 311 NW2d 741 (1981). By

the royalty pooling deed, defendants conveyed an undivided 1/2 interest in all oil and gas produced from their land to the trustee on behalf of the pool and agreed not to execute an oil or gas mining lease for the land without reserving at least 1/8 of the production as royalty. In return, defendants receive the right to share in royalties from the other interests conveyed to the pool. The royalty pooling deed was therefore a "certificate of interest or participation* * *in payments out of production under [an oil, gas, or mining] title or lease", and therefore a "security" as that term was defined in the act. Compare *People v Blankenship, supra,* and *Prince v Heritage Oil Co, supra.* See also *Wigington v Mid-Continental Royalty Co,* 130 Kan 785; 288 P 749 (1930), *Moos v Landowners Oil Ass'n,* 136 Kan 424; 15 P2d 1073 (1932), *Ward v Home Royalty Ass'n Inc,* 142 Kan 546; 50 P2d 992 (1935), *Marney v Home Royalty Ass'n of Oklahoma,* 34 NM 632; 286 P 979 (1930), and *Smith v Fishback,* 123 SW2d 771 (Tex Civ App, 1938).

Plaintiff relies on *Hathaway v Porter Royalty Pool, Inc,* 296 Mich 90; 295 NW 571 (1941), in which the Court determined that certificates issued to participants in a royalty pool analogous to that at issue here were not subject to the requirements of the blue sky law, 1929 CL 9769 *et seq.,* even though the pool had been nominally organized as a corporation. The *Hathaway* decision was based in part upon a narrower definition of "security" than that applicable here, 296 Mich 108-110, and in part upon cases holding that certificates of participation in a joint venture were not subject to the blue sky law, 296 Mich 109. See *Lindemulder v Shoup,* 258 Mich 679; 242 NW 807 (1932), *Wardowski v Guardian Trust Co of Detroit,* 262 Mich 422; 247 NW 908 (1933), and *Polk v Chandler,* 276 Mich 527; 268 NW 732 (1936). These cases distinguish

between an initial issuance of certificates to participants in the organization of a joint venture and the subsequent resale of such certificates, holding that the latter but not the former was subject to the blue sky law. See *Wardowski v Guardian Trust Co, supra,* P 430, and *Polk v Chandler, suprs,* P 532.

By the time of *Polk v Chandler,* the blue sky law had been amended to expressly exclude certificates of participation in some joint ventures. 276 Mich 533. The blue sky law, however, was repealed by 1964 PA 265, which enacted the Uniform Securities Act. The Uniform Securities Act contained no exceptions for certificates of participation in joint ventures. Written agreements creating joint ventures were found to be "securities" in *Prince v Heritage Oil Co, supra.* In 1971, MCL 451.802(b)(10); MSA 19.776(402)(b)(10) exempted a transaction from the requirement of the Uniform Securities Act in the following circumstances:

"Any offer or sale of a preorganization certificate or subscription, and the issuance of securities pursuant thereto, if:

"(A) No commission or other remuneration is paid or given directly or indirectly for soliciting any prospective subscriber;

"(B) The number of subscribers does not exceed 10; and

"(C) Each of the subscribers signs the articles of incorporation in person and not by agent and is purchasing for investment."

This transaction did not fall within this exception. An established principle of statutory construction is that the express mention in a statute of one thing implies the exclusion of other similar things *(expressio unius est exclusio alterius).* See, for example, *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971). By creating the forego-

ing narrow exception for certain initial organizational sales, the Legislature implicitly rejected a broad exception for all initial issuances of certificates of participation in a joint venture.

Plaintiff advances two related arguments. Plaintiff argues that the transaction was exempt as an isolated transaction, and that the Sederlunds, not plaintiff, issued the security and so were responsible for any violation of the act. In 1971, MCL 451.802(b)(1); MSA 19.776(402)(b)(1) exempted the following transactions from the requirements of the act:

"Any isolated nonissuer transaction, whether effected through a broker-dealer or not."

The definition of "issuer" in MCL 451.801(g); MSA 19.776(401)(g) contained the following qualification:

"(2) With respect to certificates of interest or participation in oil, gas or mining titles or leases or in payments out of production under such titles or leases, there is not considered to be any 'issuer'."

Plaintiff relies on language specifically dealing with oil, gas, and mining securities which, however, had not yet been added to the act in 1971, MCL 451.802(d); MSA 19.776(402)(d) provided in 1971:

"In proceeding under this act, the burden of proving an exemption or an exception from a definintion is upon the person claiming it."

Execution of the royalty pooling deed here was necessarily a nonissuer transaction, because there was by definition no "issuer". The royalty pooling deed was essentially two securities in one: it certi-

fied both the pool's interest in payments out of oil and gas production on defendant Sederlunds' land and defendant Sederlunds' interest in payments out of oil and gas production to the pool from other land subject to the pool. Execution of the deed was an isolated transaction from the Sederlunds' point of view; the evidence showed only one such transaction by the Sederlunds. The evidence, however, showed about 27 such transactions by plaintiff and its agents to establish the pool. We cannot see how plaintiff can rely on the exception for isolated nonissuer transactions.

Plaintiff has stipulated that the royalty pooling deed was unregistered. Sale of this security therefore was unlawful. MCL 451.701; MSA 19.776(301). A "sale" of the security, as that term was defined in MCL 451.801(j); MSA 19.776(401)(j), occurred when the royalty pooling deed was executed.

The private remedies for violations of the act were specified in MCL 451.810; MSA 19.776(410), which provided in part:

"(a) Any person who:

"(1) Offers or sells a security in violation of section 201(a), 301 or 405(b), or of any rule or order under section 403 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under section 304(d), 305(f) or 305(g), or

"(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

"Is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with inter-

est at 6% per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition.

\* \* \*

"(e) No person may sue under this section more than 2 years after the contract of sale. No person may sue under this section (1) if the buyer received a written offer, before suit and at a time when he owned the security, to refund the consideration paid together with interest at 6% per year from the date of payment, less the amount of any income received on the security, and he failed to accept the offer within 30 days of its receipt, or (2) if the buyer received such an offer before suit and at a time when he did not own the security, unless he rejected the offer in writing within 30 days of its receipt.

"(f) No person who has made or engaged in the performance of any contract in violation of any provision of this act or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract."

Subsection (e) bars any action by defendants under subsection (a), because more than two years have expired since execution of the royalty pooling deed in 1971. Defendants argue that the two-year period was tolled pursuant to MCL 600.5855; MSA 27A.5855, which provides that if a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim, the action may be commenced any time within two years after the person who is entitled to bring the action

discovers or should have discovered the fraudulently concealed matters. To support this claim of fraudulent concealment, however, defendants rely only on claims of fraud which the trial court and we rejected in other contexts. The record here will not support a conclusion that the limitation period was tolled by MCL 600.5855; MSA 27A.5855.

Subsection (f), however, bars any action by plaintiff to enforce the royalty pooling deed. The trial court did not err by denying defendants any relief on their counterclaim and third party complaint, but it erred by enforcing the deed against defendants.

Affirmed in part and reversed in part.