*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CINDY SCHAAF, COLLEEN M. FRYER, and
GWEN MASON,

        Plaintiffs/Counterdefendants-
        Appellees,

v

CHARLENE FORBES, also known as ANGIE
FORBES,

        Defendant/Counterplaintiff-
        Appellant.

UNPUBLISHED
August 6, 2019

No. 343630
Antrim Circuit Court
LC No. 2016-009008-CH

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

In this dispute among co-owners of real property, defendant appeals as of right the circuit court's orders voiding certain purported conveyances, ordering that the property be sold intact in lieu of partitioning it, and awarding plaintiffs contribution relating to the costs associated with certain earlier litigation connected with the subject property. We reverse in part, affirm in part, vacate in part, and remand to the circuit court for further proceedings consistent with this opinion, including consideration of whether, in light of this holding, the circuit court has subject matter jurisdiction to hear this case.[1]

---

[1] In her reply brief on appeal, defendant challenged the jurisdiction of the circuit court to hear and decide this case, on the basis of MCL 700.1302(b)(vi)'s grant of "exclusive legal and equitable jurisdiction" to the probate court over "[a] proceeding that concerns the . . . distribution . . . of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary," including to "determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right." Although a party may not normally raise a new issue in a reply brief, MCR 7.212(G), "a challenge to subject-matter jurisdiction may be raised at any time."

I. FACTS

Mae Fitzpatrick and Leo Bussa, mother and son, jointly owned property on the west shoreline of Torch Lake, located in Milton Township, Michigan, and the associated littoral rights. In the 1980s and 1990s, a portion of the waterfront property was divided into seven separate parcels for residential development. Access to the seven lots was through the subject parcel by an easement on a private road, Bussa Lane. After the division, the remaining Bussa/Fitzpatrick property was an 80-acre northern parcel, which was sold in 2015, and a 60-acre southern parcel. Bussa Lane provided the only means of access to the latter parcel as well.

Fitzpatrick died in 2004, leaving Bussa as the trustee of the Fitzpatrick Trust. Bussa endeavored to restructure ownership of the subject 60-acre parcel by executing five conveyances. First, he, as trustee of the Bussa Trust, conveyed to himself, as an individual, the trust's half interest. He then conveyed that interest to himself, defendant, and plaintiffs Schaaf and Fryer, "as Joint Tenants with Rights of Survivorship," while retaining his own enhanced life estate.[2] This left the Fitzpatrick Trust retaining its half interest in the subject parcel as a tenant in common, and the other half, formerly that of the Bussa Trust, shared by Bussa personally, along with defendant and plaintiffs Schaaf and Fryer, as joint tenants with rights of survivorship.

Bussa then, as trustee of the Fitzpatrick Trust, simultaneously conveyed half of the latter trust's interest to himself as trustee of the Fitzpatrick Trust, and to plaintiff Mason, "as Joint Tenants with Rights of Survivorship," while retaining his own personal enhanced life estate, and the other half of that interest to himself, again as trustee of the Fitzpatrick Trust, and to defendant, and plaintiffs Schaaf and Fryer, "as Joint Tenants with Rights of Survivorship," while again retaining his own enhanced life estate.

Shortly before he died, Bussa commenced litigation relating to a proposed subdivision of the parcel and use of the Bussa Lane easement. The owners of the seven adjacent parcels objected to any increased burden on that easement, and they contested the litigation. Upon Bussa's death, the instant parties were substituted as plaintiffs in the case, who continued the litigation. That case ended in a ruling that acknowledged that the 60-acre parcel had the right to use the easement, but prohibited the further burdening of the easement by allowing additional owners or newly created parcels to use it.

Plaintiff Mason, as successor trustee of the Fitzpatrick Trust, drew up and filed deeds confirming the transfers from Bussa to the remaindermen. Plaintiffs contested the validity of the conveyances that purport to have the Fitzpatrick Trust as a joint tenant with rights of survivorship. The circuit court agreed that "a Trust cannot hold Property as a joint tenant with rights of survivorship," and thus that the Fitzpatrick Trust "had no authority to convey the

---

*Adams v Adams*, 276 Mich App 704, 708-709; 742 NW2d 399 (2007). However, we conclude that it is appropriate to permit the circuit court to decide this issue in the first instance.

[2] An enhanced life estate is "a life estate reserved in the grantor and enhanced by the grantor's reserved power to convey." Frank, *Ladybird Deeds*, Mich BJ 30, 30 (June, 2016).

Property as joint tenants with rights of survivorship." The court voided the attendant conveyances, which left the interests in the Fitzpatrick Trust's half of the subject parcel to pass in accord with the terms of the trust itself. The circuit court recognized the resulting interests in the subject property as follows:

| | |
|---|---|
| Gwen Mason (Plaintiff) | An undivided one-half interest in a one-half undivided interest in the entire Parcel as a tenant in common with the other parties; |
| Cindy Schaaf (Plaintiff) | An undivided $16^2/_3$ percent interest in a one-half undivided interest in the entire Parcel as a tenant in common, and |
| | An undivided one-third interest in a one-half undivided interest in the entire Parcel as a joint tenant with right of survivorship as to the other interests in that one-half; |
| Colleen Fryer (Plaintiff) | An undivided $16^2/_3$ percent interest in a one-half undivided interest in the entire Parcel as a tenant in common, and |
| | An undivided one-third interest in a one-half undivided interest in the entire Parcel as a joint tenant with rights of survivorship as to the other interests in that one-half; |
| Charlene Forbes (Defendant) | An undivided $16^2/_3$ percent interest in a one-half undivided interest in the entire Parcel as a tenant in common, and |
| | An undivided one-third interest in a one-half undivided interest in the entire Parcel as a joint tenant with rights of survivorship as to the other interests in that one-half. |

The court summarized the ownership situation as "an undivided one-half of the Parcel . . . held by the Parties as tenants in common" and "[t]he other undivided half . . . owned by Plaintiff Schaaf, Plaintiff Fryer and Defendant Forbes as joint tenants with full rights of survivorship." The parties do not dispute that the circuit court correctly identified the interests of the parties if indeed Bussa's and Mason's conveyances of the Fitzpatrick Trust's real property are set aside.

The circuit court concluded that given the existence of the survivorship rights resulting from the valid conveyances of the real property from the Bussa Trust, and the subject parcel's reliance on an easement for access to and from the nearest public road, which easement could not be further burdened, "partition in kind would result in undue prejudice to the Plaintiffs and an equitable physical division of the Parcel cannot be achieved." Accordingly, the court ordered

that the property be sold intact.

The circuit court further held that the parties, "[a]s cotenants and beneficiaries of Leo Bussa," were "jointly and equally responsible for the costs and attorney fees" associated with the earlier litigation concerning the easement, and also "for the real estate taxes and expenses associated with maintenance of the Property." The court set forth detailed findings and calculations, and concluded that plaintiffs were "entitled to $30,000.86 of Defendant's share from the sales proceeds of the Property." This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo questions of law, *Merkur Steel Supply Inc v City of Detroit*, 261 Mich App 116, 124; 680 NW2d 485 (2004), including matters of statutory interpretation, *Bank v Michigan Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016).

## III. JOINT TENANCY WITH RIGHTS OF SURVIVORSHIP HELD BY A TRUST

The circuit court held, without reference to any legal authority, that the conveyances from the Fitzpatrick Trust failed by operation of law. On appeal, plaintiffs argue, without citation to any legal authority, that the circuit court correctly decided this issue. We disagree.

Plaintiffs' position finds some support in the common law, where corporations and sovereigns could not hold title as a joint tenant because the "king and corporation can never die." 2 Blackstone, Commentaries on the Laws of England, p *184. Presumably, the lack of reciprocity in survivorship precluded these entities from holding and conveying land in this manner. See 6A Fletcher, Cyclopedia of the Law of Corporations § 2816; 2 Tiffany Real Prop §423 (3d ed); 10 McQuillin Mun Corp §28:19 (3d ed). Notably, the common law rule was limited to corporations and sovereigns, and was not explicitly extended to trusts, which do not enjoy a perpetual existence because of the rule against perpetuities.[3] However, to the extent that the common law does support plaintiffs' position, it has been abrogated by statute.

MCL 554.44 states that, "[a]ll grants and devises of lands, made to 2 or more **persons**, except as provided in the following section, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy." (Emphasis added.) Thus, § 554.44 creates a presumption in favor of tenancy in common. *Matter of Estate of Kappler*, 418 Mich 237, 239; 341 NW2d 113 (1983). MCL 554.45 provides an exception to this rule, stating that, "[t]he preceding section shall not apply to mortgages, nor to devises or **grants made in trust,** or made to executors, or to husband and wife." (Emphasis added.) These statutes abrogate the common law principles regarding joint tenancy, and because they are not limited to natural persons or otherwise exclude trusts, the conveyance at issue does not fail by operation of law.

---

[3] The common law rule against perpetuities has been adopted in Michigan by statute, but has been amended to allow for perpetual trusts of personal property. MCL 554.51, *et seq.*; MCL 554.71, *et seq.*; 554.91 *et seq.*; *Moffit v Sederlund*, 145 Mich App 1, 14; 378 NW2d 491 (1985).

MCL 8.3 states, "In the construction of the statutes of this state, the rules stated in sections 3a to 3w shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature." MCL 8.3*l* states that "[t]he word 'person' may extend and be applied to bodies politic and corporate, as well as to individuals." Although this definition does not expressly include trusts, it does show the intention that the term "person" include entities other than natural persons.[4] Additionally, the legislature could have limited the term "person" in § 554.44 to mean only natural persons. We cannot read into a statute what the legislature did not include, *Book-Gilbert v Greenleaf*, 302 Mich App 538, 547; 840 NW2d 743 (2013), and limiting § 554.44 to apply only to natural persons would require this Court to rewrite the statute.

Moreover, the presumption established in § 554.44 is limited by § 554.45, which expressly exempts "grants made in trust." Words in a statute should not be construed in a vacuum, but should be read together to harmonize the meaning, giving effect to the act as a whole. *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). The express exemption in § 554.45 of "grants made in trust," along with its cross-reference to § 554.44, further evidences the legislative intent to expand the meaning of "person" to include trusts.

Additional textual support is found in MCL 565.49, which states:

Conveyances in which the grantor or 1 or more of the grantors are named among the grantees therein shall have the same force and effect as they would have if the conveyance were made by a grantor or grantors who are not named among the grantees. Conveyances expressing an intent to create a joint tenancy or tenancy by the entireties in the grantor or grantors together with the grantee or grantees shall be effective to create the type of ownership indicated by the terms of the conveyance.

---

[4] Notably, MCL 8.3*l* does not state that the term "person" can extend and "be applied ***only*** to bodies politic and corporate, as well as to individuals" as the dissent concludes. *MCL 8.3l* does not limit "individuals" to mean only natural persons. Because so, we apply the ordinary meaning of the term, *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004), and turn to *Black's Law Dictionary* (11th ed), which defines "individual" as "1. Existing as an indivisible entity. 2. Of, relating to, or involving a single person *or thing*, as opposed to a group." (Emphasis added.) Returning to the definition of "person" we note that *Black's Law Dictionary* (11th ed) defines the term as follows:

1. A human being – Also termed natural person. 2. The living body of a human being <contraband found on the smuggler's person>. 3. *An entity* (such as a corporation) that is recognized by law as having most of the rights and duties of a human being • In this sense, the term includes partnerships and other associations, whether incorporated or unincorporated. [Emphasis added.]

Thus, the plain and ordinary meaning of the terms "individual" and "person" aligns with the definition provided by MCL 8.3*l*.

-5-

Again, the legislature abrogated the common law by statute, and abolished strict adherence to the four unities doctrine. *Albro v Allen*, 434 Mich 271; 454 NW2d 85 (1990). However, the statute includes no language which hints at an intent to limit to natural persons the ability to hold a joint tenancy with rights of survivorship. Moreover, the statute requires that this Court to give full effect to the conveyance despite a grantor-trustee also being a grantee on an instrument attempting to convey a joint tenancy with a right of survivorship.

Finally, there are no provisions in EPIC[5] that suggest any legislative intent to prohibit a trust from holding and conveying real property in this manner. Rather, in the definitions section of EPIC, MCL 700.1106(o), defines "person" as "an individual or an organization." MCL 700.1106(i), further defines "organization" as, "a corporation, **business trust**, estate, **trust**, partnership, limited liability company, association, or joint venture; governmental subdivision, agency, or instrumentality; public corporation; or another legal or commercial entity." (Emphasis added.) In Article II of EPIC, which concerns intestacy, wills, and donative transfers, the legislature has limited the term "persons" in the following manner:

> (1) This part shall be known and may be cited as the "disclaimer of property interests law".

> (2) As used in this part:

> \*\*\*

> (h) "**Person**" includes an entity and an individual, but **does not include** a fiduciary, an estate, or **a trust**. [MCL 700.2901 (emphasis added).]

"Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011). "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Id.* (cleaned up).

When reading the act as a whole, it is apparent the legislature knew how to limit the definition of person to exclude trusts from the definition of "person" as it did so in § 700.2901. However, this Court cannot read that same limiting language into the statutes regarding property conveyances, §§ 554.44-45 and § 565.49, or read as surplusage the provisions in § 700.1106 which recognize a trust as a person. *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010) ("In interpreting a statute, we must avoid a construction that would render part of the

---

[5] The Estates and Protected Individuals Code, Act 386 of 1998 (EPIC). "In 1998, the Michigan Legislature enacted EPIC, 1998 PA 386, which became effective April 1, 2000. The new law, which repealed and replaced the Revised Probate Code, 1978 PA 642, MCL 700.1 *et seq.,* was intended to modernize probate practice by simplifying and clarifying the law concerning decedents' affairs and by creating a more efficient probate system. MCL 700.1201; MCL 700.1303(3)." *In re Leete Estate*, 290 Mich App 647, 661; 803 NW2d 889 (2010).

statute surplusage or nugatory.") (cleaned up).[6]

Accordingly, we hold that a trust may hold and convey real property as a joint tenant with rights of survivorship. The conveyances from the Fitzpatrick Trust to itself, plaintiffs, and defendant, as joint tenants with rights of survivorship, do not fail by operation of law, and we reverse the circuit court's ruling on this issue.

## IV. PARTITION AND CONTRIBUTION

Additionally, the circuit court's ruling on Count II, requesting partition of the property, was based on the proportionate property interests of the parties, which in turn was based on an erroneous legal conclusion, and is therefore vacated.

With regard to Count III, plaintiffs' request for contribution, we affirm. "Contribution is an equitable remedy based on principles of natural justice." *Tkachik v Mandeville*, 487 Mich 38, 47; 790 NW2d 260 (2010). The circuit court's ruling on this issue was not made with regard to the respective property interests of the parties. In fact, it was made in *disregard* of those interests, assessing the four parties equal shares of the costs, relying on the equitable maxim that "equality is equity."

---

[6] The dissent presumably concludes that the legislature has not abrogated the common law, and therefore, a trust cannot hold property as a joint tenant with the right of survivorship because trusts cannot die as a natural person does. As we stated *supra*, this is a questionable extension of the common law, which only prohibited the monarch and corporations from holding property in this manner. Blackstone and the seminal case, *Law Guarantee and Trust Society v Governor & Co of the Bank of England*, 24 QBD 406 (1890), teach that the fundamental principle underlying the right of survivorship is the *reciprocity* of survivorship, meaning that no party may exist perpetually. See 2 Blackstone, Commentaries on the Laws of England, pp **184-185, n 33 (stating that the right of survivorship, or *jus accrescendi*, "ought to be mutual" but that another reason for prohibiting corporations from holding such rights is that it might be "ruinous to the family of the deceased partner" to permit capital or stock to pass in this manner, and thus, "[t]he right of survivorship, for the benefit of commerce, holds no place among merchants") (citation omitted). This reasoning does not apply to trusts that cannot exist in perpetuity. See MCL 554.51, *et seq.*; MCL 554.71, *et seq.*; 554.91 *et seq.* Accordingly, there is no reason why the right of survivorship should be made exclusive to beings that enjoy a natural life, as opposed to trusts that also are subject to the rule against perpetuities.

Further, the dissent recites the *Black's Law Dictionary* (11th ed) definitions of "right of survivorship" and "death" for the proposition that the right of survivorship may only be held by a natural person susceptible to "cessation of all vital functions and signs." However, the complete entry for "death" reads as follows: "The ending of life; the cessation of all vital functions and signs. — Also termed decease; demise." "Demise" is defined as, "[t]he death of a person or (figuratively) of a thing; the end of something that used to exist <the corporation's untimely demise>." *Black's Law Dictionary* (11th ed). Accordingly, the plain meaning of the terms associated with rights of survivorship do not limit enjoyment of this right to only natural persons.

## V. LATE-OFFERED DOCUMENTATION

Defendant argues that the circuit court erred by receiving, and considering, more than 300 pages of documentation plaintiffs offered only as the case proceeded to the issue of contribution. We disagree. We review a circuit court's evidentiary rulings for an abuse of discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993). This includes a court's decisions concerning discovery. *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 478; 608 NW2d 823 (2000). "A trial court does not abuse its discretion when its decision falls within the range of principled outcomes." *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016).

Defendant characterizes plaintiffs' late submission of documents as occurring less than 24 hours before trial, but, in fact, it was on the eve of the day originally scheduled for trial on the issue of contribution, but which proceeding brought to light that plaintiff Fryer could not be present because of a medical issue, and also that the parties had agreed to have the court decide the question of contribution on the basis of briefing to be completed several weeks hence.

In responding to defendant's motion to disallow the recent submissions, the circuit court took into account, among other things, that a decision on contribution was still several weeks away:

> First, any documents that were identified either formally as trial exhibits or that were produced as part of discovery are available as trial documents in this case, which would include largely apparently, based on the representations of counsel, the documentation that has been offered or is intended to be offered by the plaintiff in this case; however, any documents that were not specifically identified or reasonably identified pursuant to the normal general identifications that attorneys use in their witness and exhibit lists would not be admissible. There will be an opportunity in reply briefs for argument with regard to admissibility of documentation. So, my expectation is that probably largely in the reply briefs there will be arguments regarding admissibility of individual documents, the parties are welcome to make those for any reason whatsoever and the Court will rule on those in a case by case basis. But, again, these documents were largely provided by the defense, they are known to the defense, while they were not specifically identified as trial exhibits and while defendant is correct the initial trial was to be heard I believe in the fall of 2016, which would mean the initial trial exhibits would have been due in the fall or late summer, August probably of 2016, we are now six months beyond that, we have had multiple hearings on this matter since that time, the element of surprise if you will particularly with regard to matters that have been produced pursuant to discovery requests simply doesn't exist. The parties know what the files are, they know what the potential exhibits are, so, again, we'll allow matters that are at least identified somehow in the witness and exhibit list and we'll take argument regarding anything that isn't or any objections to matters that are on the witness exhibit list in the reply briefs and the Court will decide those on a case by case basis.

On appeal, defendant continues to complain about the filing of "305 pages of proposed

trial exhibits," without any of the differentiation that the circuit court called for. Further, defendant does not dispute the validity of the court's distinguishing between documents that were and were not "specifically identified or reasonably identified pursuant to the normal general identification that attorneys use in the witness and exhibit lists," does not take issue with the court's statement concerning what would and would not be deemed admissible thereafter, and does not assert that she acted on the invitation to specify objectionable documents in the briefing to follow, let alone that the circuit court made any erroneous decisions in connection with such activity.

To summarize, defendant on appeal reiterates the general objection to plaintiffs' offering of more than 300 pages of documents collectively, with no acknowledgement that the circuit court was prepared to distinguish the offerings in meaningful ways and issue decisions on admissibility accordingly. Defendant's failure to offer cogent argument relating to the circuit court's thoughtful ruling from the bench on her objection to plaintiffs' recent offering of abundant production, or to assert that she accepted the court's invitation to sort through the documents and offer more nuanced reasons for objecting to the admission of some, constitutes abandonment of the issue. See *DeGeorge v Warheit*, 276 Mich App 587, 594-595; 741 NW2d 384 (2007) ("It is not enough for an appellant to simply announce a position or assert an error in his or her brief and then leave it up to this Court to discover and rationalize the basis for the claims, or unravel and elaborate the appellant's arguments, and then search for authority either to sustain or reject the appellant's position.").

## VI. CONCLUSION

We reverse in part, vacate in part, affirm in part, and remand to the circuit court for further proceedings consistent with this opinion, including consideration of whether, in light of this holding, the circuit court has subject matter jurisdiction to hear this case.

/s/ Jonathan Tukel
/s/ Michael J. Riordan