## FARMERS' CO-OPERATIVE ELEVATOR OF FOWLER *v.* STURGIS & SONS.

1. CORPORATIONS—CONTRACTS—SELLER OF BUSINESS NOT BOUND BY UNDERSTANDING OF STOCKHOLDERS NOT ASSENTED TO BY HIM.

   Where a corporation was negotiating with the owner of an elevator business for its purchase, a statement by a director at a meeting between the stockholders and the owner, to the effect that they would make no contract without an agreement by the owner not to re-enter the elevator business in said village, and not denied by said owner, *held,* not to constitute contract relations, curtail the power of the directors in subsequent negotiations, or prevent the owner from refusing to contract to remain out of business after the sale.

2. SAME—FRAUD.

   Even if the stockholders had an understanding that no contract would be made without an agreement on the owner's part to remain out of the business, it would not be binding upon him, in the absence of contractual relations, and no fraud on his part may be predicated thereon because a contract of sale was subsequently made between him and the directors in which he reserved the right to re-engage in business.

3. INJUNCTION—CONTRACTS—PARTIES—RESTRAINT OF TRADE.

   In the absence of any evidence that the sons of the owner of an elevator business sold to plaintiff corporation were interested therein in any way, the purchaser was not entitled to restrain them from re-engaging in said business after the sale.

4. CORPORATIONS—CONTRACTS—RESTRAINT OF TRADE—INJUNCTION.

   Where the committee representing the board of directors

---

On sale of business and good will as a limitation upon vendor's right to engage in competing business, see notes in 19 L. R. A. (N. S.) 762; L. R. A. 1918F, 1179.

On enforceability by purchaser of business of covenant of a third person with his vendor not to engage in similar business, see note in 22 A. L. R. 754.

of a corporation in negotiating for the purchase of an elevator business fully understood that the contract as finally prepared did not restrain the seller from re-engaging in the business in the same village, and the board of directors before ratifying it fully understood its import, said corporation may not maintain a suit to restrain the seller from again engaging in the business.

5. COVENANTS—CONTRACTS—GOOD WILL—RESTRAINT OF TRADE.
   The purchase of the good will of a business does not carry an engagement by the seller to refrain from like business, or prevent him from re-engaging therein.

6. REFORMATION OF INSTRUMENTS — CONTRACTS — EVIDENCE—SUFFICIENCY.
   Evidence showing that the directors of a corporation purchasing an elevator business considered the advisability of having a clause in the contract of sale restraining the seller from again engaging in said business in the same village, but finally decided to purchase without said clause at a lower price, *held*, not to warrant injunctive relief to the purchaser restraining the seller from again engaging in the business, or to show grounds for reforming the contract.

Appeal from Clinton; Moinet (Edward J.), J.   Submitted October 12, 1923.   (Docket No. 95.)   Decided April 10, 1924.

Bill by the Farmers' Co-operative Elevator of Fowler, Michigan, against Sturgis & Sons, Lucene Sturgis and others to enjoin defendants from engaging in the elevator business.   From the decree rendered, plaintiff and defendant Lucene Sturgis appeal.   Reversed, and bill dismissed.

*Smith, Hunter & Spaulding*, for plaintiff.

*Searl & Searl*, for defendants.

November 5, 1919, plaintiff purchased from defendant Lucene Sturgis the grain elevators, electric light plant and grist mill, together with the good will, located at Fowler and operated at that time under the name

of Sturgis & Sons.    Plaintiff corporation was organized by upward of 300 farmers, with a subscribed capital of $50,000, for the purpose of erecting a building and engaging in the elevator business at Fowler. Fowler is a small town and probably a good location for one elevator business.    Sturgis & Sons had an established business there and plaintiff was organized to enter the field as a competitor.    Some time before the purchase, negotiations were carried on looking toward a sale by Sturgis & Sons, and purchase by plaintiff of the established business and thereby eliminate competition.    Sturgis & Sons was a trade name adopted by defendant Lucene Sturgis who was sole owner of the business and property.

To sell and stay out of business Lucene Sturgis wanted $80,000.    This was more than negotiators for plaintiff would pay and preliminary work toward the erection of a new elevator was commenced.    Thereupon Lucene Sturgis said he would sell for $70,000. A meeting of the stockholders was held, at which Lucene Sturgis was present, and the president and secretary of the company informed the stockholders of the offer and the necessity, if such a price was paid, for the stockholders to double their subscriptions.    The advantage of having the sole business was also stated. Lucene Sturgis made no representations at the meeting, merely acceding to what had been said and expressing a willingness to answer questions.    No questions were asked.    Additional stock subscriptions were made.    Plaintiff's board of directors selected the president and secretary to negotiate a contract for the purchase.

November 4, 1919, the president and secretary, accompanied by another director, employed an attorney and met Lucene Sturgis at the office of another attorney in the city of St. Johns and there terms were discussed, agreed to, reduced to writing and signed, subject, however, to the approval of plaintiff's board

of directors. The secretary of plaintiff company engineered the negotiations from the start and had with him, on November 4th, a memorandum of terms to be covered, among which was an undertaking by Lucene Sturgis to keep out of the business at Fowler. When that subject was proposed by the secretary, at the meeting of the parties on November 4th, Lucene Sturgis said he would not agree to remain out of such business unless paid $10,000 more or, in lieu thereof, an agreement by plaintiff to not employ a Mr. Martin. The matter was discussed at length, and plaintiff's representatives were informed by both attorneys that the purchase of the good will would not bar Lucene Sturgis from re-engaging in the same business. Plaintiff's secretary, Mr. Bengel, testified that the attorney for Lucene Sturgis said:

" 'Let's drop it, Mr. Sturgis won't bother you, he's going to leave Fowler anyway,' so we dropped it; this was probably foolish of us but we dropped it."

The attorney for Lucene Sturgis testified:

"I recall saying to these men 'I presume if Mr. Sturgis is going to leave Fowler, I presume that he wouldn't go back in business in Fowler but I don't know, and if you want him bound where he can't go back in business you should have a clause in the contract. Now,' I said, 'gentlemen, you seem to be at a standstill here. You have either got to drop this entire deal, quit where you are, or else you must get together and decide what you will do.' I recall that one of the three directors, don't know as I can say which one now, said something about it wouldn't do much good to have that clause in because Mr. Sturgis' sons could start up in business, and some one of them said something about that the Co-ops. were strong enough, there was 300 of them anyway, and they would take their chances, and I think Mr. Bengel was the one that finally said 'Well, we will go on with the contract and leave it out,' or words to that effect."

It was left out of the contract and the reason why

the contract was drawn without a provision obligating Lucene Sturgis not to re-enter the business is disclosed in the following testimony of Mr. Bengel (questions by the trial judge) :

"*Q.* Mr. Bengel why didn't you insist upon that provision being put in the contract before you signed it?  *  *  *

"*A.* Well, we would rather have had it in, but, the reason—Shall I tell you the reason that we didn't insist?

"*Q.* I say why didn't you insist on having it in there before you signed it?

"*A.* Well, we thought of that, judge, but I thought we could restrain them, and I had the creamery case in mind where not even the good will was in, and we had sustained it, and I thought we would take chances.

"*Q.* You thought you would take chances?

"*A.* Well, no, but he repeated his promises so often we had good reason to think he would keep his promise. Of course we wasn't satisfied that it wasn't in, but we thought he was going to keep his word and he wouldn't come back, and I even told the board————.''

The contract was signed on November 4th by plaintiff's president and secretary and by Lucene Sturgis and the next day was submitted to plaintiff's board of directors, and approved and a $20,000 payment thereon authorized and made.  Plaintiff's board of directors then knew the contract contained no agreement on the part of Lucene Sturgis to keep out of business.  The subject was discussed among the members and the contract was approved and the payment thereon made.

In January, 1920, two bills of sale and a deed, filled out but not signed by Lucene Sturgis, were submitted to plaintiff's board of directors, in which the right of Lucene Sturgis to again engage in business was reserved.  With such reservation by Lucene Sturgis the instruments were executed and accepted by the plaintiff and the property purchased paid for in accordance with the contract.  In January, 1920, de-

fendant Lucene Sturgis, Marion Sturgis and Howard Sturgis formed a copartnership and started the erection of an elevator at Fowler.

Plaintiff filed the bill herein to restrain defendants from carrying on such a business at Fowler, claiming the contract of November 4, 1919, did not express the true agreement of the parties; that defendant Lucene Sturgis was bound by the negotiations leading up to the contract; that what was said at the meeting of the stockholders limited the power of the directors to enter into contract, and they could make no contract without an agreement on the part of Lucene Sturgis to stay out of business; that Marion and Howard Sturgis were interested in the property purchased by plaintiff, and asked the court to reform the contract and enjoin defendants from conducting a competing business at Fowler.

At the hearing a decree was entered restraining Lucene Sturgis from re-engaging in the business and from being interested in a competing business, but denied relief against defendants Marion and Howard Sturgis. Plaintiff and defendant Lucene Sturgis appealed.

WIEST, J. (*after stating the facts*). The decree entered in the circuit must be reversed and the bill dismissed. What was said by a director of plaintiff at the meeting of the stockholders, when defendant Lucene Sturgis was present, about the purchase eliminating competition, and not then and there denied by defendant Lucene Sturgis, did not constitute contract relations, curtail power of plaintiff's directors in subsequent negotiations, or prevent defendant Lucene Sturgis from refusing to contract to remain out of business. But it is insisted that, with this understanding on the part of the stockholders, it was a fraud upon the corporation to enter into contract without an obligation on the part of the defendants to refrain

from engaging in like business at Fowler. Fraud by whom? Not by defendant Lucene Sturgis, for until the contract was made he was not bound. If it was a fraud, in point of law (a question we do not determine), for the directors to proceed and make a contract contrary to the understanding of the stockholders, then plaintiff, if it has any remedy at all, has mistaken its remedy in filing this bill. The contract was with Lucene Sturgis as sole owner and the deed and bill of sale were given by him. The evidence fails to show that Marion Sturgis and Howard Sturgis, sons of Lucene, were interested as partners in Sturgis & Sons, and the circuit judge was right in denying injunctive relief as to them.

The committee of directors, representing plaintiff in negotiating the contract, fully understood that the contract, as finally prepared, did not restrain defendants from engaging in the same business at Fowler, and so did the board of directors in ratifying such tentative contract and in making payment thereunder. The talk that defendant Lucene Sturgis might move away from Fowler never became an engagement that he would do so, and we are satisfied plaintiff's officers relied on the 300 stockholders of the company to command the trade rather than on the defendant's moving away. Later, when plaintiff made further payment and received a deed and bill of sale, both instruments expressly saved defendant Lucene Sturgis the right to continue in business at Fowler.

The purchase of the good will of the business did not carry an engagement by defendant Lucene Sturgis to refrain from like business, or prevent him from doing so, and the committee representing plaintiff in preparing the tentative contract were so informed by their attorney and also by the attorney for defendants. This is an injunctive bill based on affirmance of the contract. The written contract warrants no injunctive relief. The evidence fails to show any

ground for reforming the contract. The mistake made by plaintiff's officers was in not securing an engagement from defendant that he would refrain from engaging in a competing business. This mistake cannot be rectified. In the absence of an agreement to keep out of business defendant Lucene Sturgis could re-engage in the same business at Fowler. No reason appearing for reforming the contract, the contract, as executed, bars parol evidence enlarging its terms. *Davis* v. *Steingass*, 215 Mich. 57; *Frischkorn Real Estate Co.* v. *Hoskins, ante,* 30.

Bill dismissed, with costs to defendants.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.