SEWALL v. FELLER.

1. MONOPOLIES—CONTRACT FOR PROTECTION OF VENDEES—FINDING OF COURT—EVIDENCE.

In buyer's suit to enjoin owner of three-sevenths of stock and dominant director and officer of corporate seller of a department store business and fixtures from opening a competitive business in city in which store was located, finding of trial judge that the question of defendant's re-entry into business in the city was discussed and that latter gave plaintiff assurances that defendant would not go into business again in that city *held*, supported by record, especially by testimony of attorney to whom parties went to have bill of sale drawn.

2. SAME—CONTRACTS—CONDUCT OF STOCKHOLDER OF CORPORATE SELLER—SECRET INTENTIONS.

Defendant's contract not to engage in a competitive business in city in which corporate seller of department store was doing business *held*, made out by conduct of defendant, the president and dominant director of the corporation which was thereupon dissolved and who represented to plaintiff, buyer, that good will thereupon was ended and that defendant was leaving for another State and not coming back and that there were other towns in this State to start business again if he wanted to start there; it being immaterial whether or not defendant's secret intentions were at variance with the intentions he expressed.

3. SAME—GOOD WILL—AMBIGUOUS STATEMENTS.

Defendant, president and holder of three-sevenths of stock of corporate seller of department store business and fixtures, who made various statements about corporation being dissolved and that he was leaving the city and not returning when matter of good will was discussed, even though they may be regarded as ambiguous and equivocal, must bear risk of reasonable interpretation that they were an absolute promise under the circumstances at the time they were made and such statements led both plaintiff and attorney who drafted bill of sale to believe writing embracing the matter was unnecessary.

4. EVIDENCE—PAROL EVIDENCE—CORPORATION'S BILL OF SALE—
PRESIDENT'S INDIVIDUAL PROMISE.

Parol evidence rule *held*, not to exclude oral testimony that
defendant who signed bill of sale of entire business of cor-
poration as president made a promise not to re-enter a com-
petitive business in the same city as he was not a party to the
instrument, and where corporation to which he had not made a
promise not to compete was thereupon dissolved, its bill of sale
could not, under the circumstances, embody the full agreement
of the parties or define the limits of plaintiff's rights.

5. MONOPOLIES—STOCKHOLDERS' CONTRACTS NOT TO COMPETE—PRO-
TECTION OF VENDEE.

Undertaking of president and stockholder not to compete with
purchaser of corporation's business and fixtures *held*, not in-
valid as a restraint of trade where business was sold for a
valuable consideration, in good faith, and without any intent
to create, build up, establish, or maintain a monopoly but was
made merely to protect the vendee (3 Comp. Laws. 1929,
§§ 16667, 16672).

6. SAME—STOCKHOLDER—CORPORATE GOOD WILL.

Defendant, a stockholder of a corporation which was dissolved
upon sale of its business to plaintiff, and who received his pro-
portionate share of the purchase price paid by plaintiff *held*,
to have had such an interest in the corporation's business and
good will within conception of statute relating to contracts
in restraint of trade as to make a purchaser of such interest
and good will a transferee thereof (3 Comp. Laws 1929,
§ 16672).

Appeal from Midland; Hart (Ray), J. Submitted
January 4, 1939. (Docket No. 38, Calendar No.
40,334.) Decided March 9, 1939.

Bill by Sam Sewall against Morris Feller, also
known as Charlie Glass, to restrain participation in
a competing business. Decree for plaintiff. Defend-
ant appeals. Affirmed.

*Chester E. Morris*, for plaintiff.

*Maile & Leach* (*Leonard J. Grabow*, of counsel), for defendant.

BUTZEL, C. J.   Morris Feller, also known as Charlie Glass, defendant and appellant herein, was the president, the owner of three-sevenths of the stock, and the dominant director and officer of the Midland Cut Rate Department Store, Inc., which at one time was called the "Annex." The balance of the stock was held by Alma J. McNamara and her daughter. The business was also known, however, as "Charlie's Store." Feller had negotiations for the sale of the store with Sam Sewall, plaintiff, who had purchased other stocks of merchandise and conducted business in other cities, and who stated that he realized defendant had an unusually good store in a city that attracted him.   Defendant demanded a purchase price of $25,000 for the assets of the corporation; Sewall offered $12,000, and Feller wanted $4,000 more for renovating the basement of the store. Finally a purchase price of $16,000 was agreed upon.

A bill of sale was executed which included the stock, goods, merchandise, together with fixtures of every name and nature, and accounts receivable of the company. The bill of sale was signed "Midland Cut Rate Department Store, Inc., by Morris Feller," and underneath was printed "Morris Feller, President." It was also signed "By Alma J. McNamara, Secretary and Treasurer," and underneath was similarly printed the name of "Alma J. McNamara." In the sworn acknowledgment, defendant states that it is the free act and deed of the corporation.

The trial court found that at the time the bill of sale was executed, defendant Feller had agreed orally with the plaintiff not to re-enter business in

Midland in competition with the plaintiff. This agreement was never reduced to writing.

Defendant went to California, but in a comparatively short time returned to Midland, where he rented a store almost opposite the one which he had sold to the plaintiff, and advertised that "Charlie is coming to town again with bigger and better values than ever. Watch for the opening." Plaintiff thereupon filed a bill seeking to enjoin defendant from opening a competitive business in Midland. After a hearing, the judge granted a decree for plaintiff. Defendant appeals.

We think the finding of the trial judge that the question of defendant's re-entry into business in Midland was discussed and that defendant gave his assurances that he would not go into business again in the city of Midland is supported by the record. Defendant claims that the only representation he made was that he was going to California for 30 days. Plaintiff, however, testified that defendant stated he was going to California to establish a permanent residence. We are particularly impressed with the testimony of the attorney to whom the parties went to have the bill of sale drawn. He stated unequivocally that at his office a meeting of the stockholders of the Midland Cut Rate Department Store, Inc., was held and the corporation dissolved, and he then exhibited the bill of sale he had prepared. To this plaintiff objected, stating that it contained no provision regarding the good will of the business and did not prevent defendant from going back into business in Midland at his pleasure. Whereupon the defendant stated to plaintiff:

"As far as the good will of the business, the corporation is being dissolved. That is the end of that. * * * You take it over and use the name and as far

as my coming back into the business, I am leaving for California tomorrow morning. I have a chance to get a ride out there and I am going and I am not coming back. * * * There is plenty of other towns in Michigan to start business again if I want to start there."

According to the attorney's testimony, plaintiff then stated to the defendant:

"Well, under those circumstances, go ahead and sign up. I will take it."

While this oral agreement was not formally uttered in so many words, there was a sufficient "expressed intention" by defendant that he would not set up a competitive business in Midland. The contract was made out by "some intelligible conduct, act, or sign" within the doctrine laid down in *Woods* v. *Ayres*, 39 Mich. 345 (33 Am. Rep. 396). It is immaterial whether or not defendant's secret intentions were at variance with the intentions he expressed. *Hudson* v. *Columbian Transfer Co.*, 137 Mich. 255 (109 Am. St. Rep. 679). Even if the various statements made by defendant to the plaintiff are regarded as ambiguous and equivocal, defendant must bear the risk of such equivocal language when the plaintiff did not unreasonably interpret them to mean an absolute promise. Defendant could not make statements which would reasonably appear to be promises under the circumstances at the time they were made and then expect to avoid the consequences thereof by asking this court to draw overfine distinctions.

The case is distinguished from *Farmers' Co-Operative Elevator of Fowler* v. *Sturgis & Sons*, 226 Mich. 437. While there had been a statement made that the purchaser expected the vendor to agree not

to compete, it clearly appeared that when the transaction was being closed, the vendor flatly refused to enter into such an agreement unless $10,000 additional was paid or the purchaser agreed not to employ a certain person, and the matter was dropped by the purchaser because it believed it could command the trade regardless of an express agreement and because its attorney believed that he could restrain subsequent competition in any event. Here Feller's repeated assurances that there was no possibility of competition from him in the future led both plaintiff and the attorney to believe that a writing was unnecessary.

Appellant argues, however, that no testimony was admissible to show the parol agreement by defendant because the parties had integrated their contract in the written bill of sale. To this we cannot agree. While "Charlie Glass" may have represented the Midland Cut Rate Department Store in the mind of the public, there is nothing to indicate that defendant was a party to the bill of sale. The instrument was executed by him for the corporation, in which he held less than half the stock, and acknowledged by him as the free act and deed of the corporation. While it is true that the corporation may have been dissolved a few minutes before the bill of sale was executed, the transactions were practically contemporaneous. It is evident that the business was sold in order to liquidate and dissolve the corporation and the bill of sale was a step in carrying out the entire transaction. Under these circumstances we do not think that defendant is to be regarded as a party to the instrument within the operation of the parol evidence rule.

Appellant further insists that the rule precludes the admission of this evidence even if defendant is a

stranger to the bill of sale. He quotes the following language from 10 R. C. L. p. 1021, § 213:

"Where one, although not a party to the instrument, bases his claim upon it, and seeks to render it effective in his favor as against the other party to the action, by enforcing a right originating in the relation established by it, or which is founded upon it, the parol evidence rule applies."

Without approving or rejecting this summary, we do not think it is applicable here. Plaintiff is here seeking to enforce an agreement by defendant not to compete with him. Because plaintiff would have had no need for such an agreement if he had not acquired the business from the corporation in which defendant was a stockholder, is clearly no reason to regard his claim as "originating in the relation established by" the bill of sale or "founded" upon it. It was unnecessary and would have been unreasonable to secure a promise not to compete from the corporation for plaintiff saw it dissolved in his presence at the very time the bill of sale was given. Defendant, of course, made no promise to the corporation. Under such conditions the bill of sale could not embody the full agreement of the parties or define the limits of plaintiff's rights. See *Picard* v. *McCormick,* 11 Mich. 68; *Seligman* v. *Ten Eyck Estate,* 74 Mich. 525.

We do not find that defendant's undertaking not to compete is invalid under 3 Comp. Laws 1929, § 16667 (Stat. Ann. § 28.61), as a restraint of trade. The business was sold for a valuable consideration in good faith and "without any intent to create, build up, establish or maintain a monopoly." The contract "to protect the vendee" is within the permis-

sive exception to the general statute, 3 Comp. Laws 1929, § 16672 (Stat. Ann. § 28.66).

"A stockholder in a corporation has such an interest in its business and good will within this statute, as to make a purchaser of such interest and good will a transferee of the same." *Buckhout* v. *Witwer,* 157 Mich. 406 (23 L. R. A. [N. S.] 506).

In the instant case, defendant, as a stockholder, received his proportionate share of the purchase price paid by Sewall for the corporate assets.

*Arctic Dairy Co.* v. *Winans,* 267 Mich. 80 (94 A. L. R. 334), involved employees with no such financial interest in the business. It is neither inconsistent with the doctrine of *Buckhout* v. *Witwer, supra,* nor applicable to the present situation.

The decree of the trial court, restraining defendant from engaging in a similar competing business in Midland so long as plaintiff continues to operate the business of the Midland Cut Rate Department Store, is affirmed, with costs to plaintiff.

Wiest, Bushnell, Sharpe, Potter, Chandler, and McAllister, JJ., concurred. North, J., took no part in this decision.