DOMBROWSKI v CITY OF OMER

Docket No. 137954. Submitted December 16, 1992, at Lansing. Decided February 22, 1993; approved for publication June 3, 1993, at 9:00 A.M. Leave to appeal denied, 443 Mich —.

Gregory Dombrowski brought an action in the Arenac Circuit Court against the City of Omer and the Arenac County Road Commission, seeking damages for injuries he sustained while participating in a competitive event that was part of an annual festival held in the city and alleging that his injuries were the direct and proximate result of the defendants' negligence. The court, Carl L. Horn, J., denied summary disposition on the bases of governmental immunity and lack of duty, but granted summary disposition for the defendants on the basis of a waiver of liability signed by the plaintiff. The plaintiff appealed, and the defendants cross appealed.

The Court of Appeals *held:*

1. The language of the waiver form signed by the plaintiff that indicated that he released "all participating groups and persons officially connected with this event" was sufficiently broad to include the defendants.

2. Because the waiver was clearly stated and prominently located on the sheet signed by the plaintiff, and in light of the absence of any evidence suggesting that the plaintiff had been misled concerning the nature of the document he was signing, his failure to read the waiver before signing it does not render it unenforceable. Knowledge by a representative of the festival that the plaintiff had not read the text of the waiver before signing, by itself, does not constitute a mutual mistake in the execution of the waiver. Further, the fact that a single waiver form was signed by a number of contestants does not affect its validity as a waiver. Accordingly, the court correctly granted summary disposition on the basis of the waiver, and it is unnecessary to consider whether the court should have granted summary disposition on the bases of governmental immunity or lack of duty.

Affirmed.

*Ronald R. Tyler,* for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe*), for the Arenac County Road Commission.

*Michael N. Freel, P.C.* (by *Michael N. Freel*), for the City of Omer.

Before: McDONALD, P.J., and GRIBBS and SAWYER, JJ.

PER CURIAM. Plaintiff appeals and defendants cross appeal from an order of the circuit court granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). We affirm with respect to the appeal and decline to address the issues raised on cross appeal.

On April 11, 1987, plaintiff attended the annual Sucker Festival held in the City of Omer. Among the events conducted as part of the festival was a "rope climb" in which a rope was stretched across the Rifle River and the participants would hang from the rope by their hands and attempt to cross the river on the rope. The winner was the participant who crossed the river in the shortest period of time. Various cash prizes were awarded to the winner and runners-up, and there was a $1 entry fee paid by the participants.

Plaintiff entered the rope event and was almost across the river when he suddenly lost his grasp of the rope and fell head first into the river. As a result of his fall, plaintiff suffered various injuries, resulting in permanent, partial disability. Thereafter, plaintiff filed the instant suit against the City of Omer and the Arenac County Road Commission, alleging that his injuries were the direct and proximate result of defendants' negligence. Plaintiff also filed a second suit against various individ-

ual defendants involved in the organizing and running of the Sucker Festival.[1]

Defendants had initially moved for summary disposition on the bases of governmental immunity and of plaintiff's failure to state a claim, plaintiff having failed to plead and show that defendants owed a duty to him. That motion was denied. Defendants thereafter again moved for summary disposition, this time arguing that plaintiff's claim was barred by a release of liability that plaintiff had signed before participating in the event. The trial court granted summary disposition on this basis.

In his brief on appeal, plaintiff argues that the trial court erred in granting summary disposition in favor of defendants on the basis that his claim was barred by the liability waiver executed by him in connection with his entry into the rope event. We disagree. Before participating in the event, each participant was required to sign a typewritten form entitled "Waiver of Liability," with the caption of "Rifle River Sucker Festival" at the top, a listing of the applicable events, the aforementioned waiver of liability title, and the following statement:

> In consideration of the possible injurys [sic] which could occur in this event, I hereby release all participating groups and persons officially connected with this event from any and all liability for any injury or damages whatsoever arising from any participation in this event.

[1] The two actions were consolidated in the trial court for purposes of discovery, and the trial court entered a joint order granting summary disposition in favor of the municipal defendants in this action as well as in favor of many, if not all, of the individual defendants in the second action. However, plaintiff has only claimed an appeal from the order with respect to the action against the municipal defendants.

Below that were several lines for the participants to sign, including a notice that parents had to sign if the participant was under the age of eighteen. The operative language quoted above was double-spaced and in all caps. The type size appears to be that of a standard pica typewriter (i.e., twelve-point) with a script font. Several signatures appear on the form, with defendant's signature being on the bottom of the list. The times of the various participants are also noted on the list.

Plaintiff argues that this waiver of liability is ineffective because it does not by its own terms release defendants and because Michigan law supports rescission or invalidation of such a waiver where there has been a mistake or misrepresentation. With respect to plaintiff's first argument, that the release does not by its own terms cover the municipal defendants involved herein, we disagree. The waiver of liability released "all participating groups and persons officially connected with this event . . . ." In our opinion, this all-encompassing language includes any individual or group, including any municipal corporation, that was connected with the organization or running of the event. It was not necessary for the release to individually name each person or entity to be released from liability. The scope of the applicability of the waiver is clear: it waived liability with respect to any person or group responsible for the rope climb event. Defendants are municipal corporations. Accordingly, they come within the generally understood meaning of the word "person." See Black's Law Dictionary (5th ed), p 1028; *Random House College Dictionary* (rev ed), p 990; see also MCL 8.3-1; MSA 2.212(12) (person as used in statutes includes bodies politic and corporate).[2]

---

[2] We note plaintiff's comment in his brief that defendants took the

Plaintiff also argues that the waiver of liability is unenforceable because there has been a mutual mistake. We disagree. The enforceability of waivers of liability was discussed by this Court in *Paterek v 6600 Ltd*, 186 Mich App 445, 448-449; 465 NW2d 342 (1990):

> We note initially that it is not contrary to this state's public policy for a party to contract against liability for damages caused by ordinary negligence. See *St Paul Ins v Guardian Alarm*, 115 Mich App 278, 283; 320 NW2d 244 (1982), and cases cited therein. As with other contracts, the validity of a contract of release turns on the intent of the parties. *Trongo v Trongo*, 124 Mich App 432, 435; 335 NW2d 60 (1983), lv den 417 Mich 1100.32 (1983). To be valid, a release must be fairly and knowingly made. *Denton v Utley*, 350 Mich 332; 86 NW2d 537 (1957); *Binard v Carrington*, 163 Mich App 599, 603; 414 NW2d 900 (1987); *Trongo, supra.* A release is not fairly made and is invalid if (1) the releasor was dazed, in shock, or under the influence of drugs, (2) the nature of the instrument was misrepresented, or (3) there was other fraudulent or overreaching conduct. *Theisen v Kroger Co*, 107 Mich App 580, 582-583; 309 NW2d 676 (1981).

The nature of the mistake alleged by plaintiff is his failure to read the waiver of liability before signing it. Plaintiff further argues that this mistake is mutual because the person responsible for obtaining the signatures on the waivers of liability, Ann Tremble, was aware that he signed it without reading it and, therefore, was aware of his mistake. While we would agree that signing a

position below that they were not involved in the Sucker Festival, suggesting that that position is inconsistent with their position now that they are released from liability by the terms of the liability waiver. It is, of course, not inconsistent for defendants to argue that they have no liability because they were not involved in the festival but that, even if they were involved, there would still be no liability because of the waiver of liability executed by plaintiff.

document without reading it first is a mistake and that Tremble did testify in her deposition that she did not believe that plaintiff had read the document before signing it, we are not persuaded that this presents a ground for rescission under the doctrine of mutual mistake. *Paterek, supra* at 450, also considered whether a waiver of liability could be rescinded because the plaintiff had signed it without reading it first and opined as follows:

> This conclusion is also supported by the principle that one who signs a contract cannot seek to invalidate it on the basis that he or she did not read it or thought that its terms were different, absent a showing of fraud or mutual mistake. As we stated in *Moffit v Sederlund,* 145 Mich App 1, 8; 378 NW2d 491 (1985), lv den 425 Mich 860 (1986), "[f]ailure to read a contract document provides a ground for rescission only where the failure was not induced by carelessness alone, but instead was induced by some stratagem, trick, or artifice by the parties seeking to enforce the contract. *Id.* See also *Christensen v Christensen,* 126 Mich App 640, 645; 337 NW2d 611 (1983), lv den 417 Mich 1100.45 (1983). This principle is directly applicable to the facts of this case, where plaintiff admits to signing the release contract, but claims that he was not aware of the terms of the document.

Thus, rescission would be appropriate only if Tremble, or some other agent of defendants, fraudulently induced plaintiff into signing the document without reading it or otherwise misrepresented the contents of the document. There is no indication in the case at bar that this is the case. Tremble testified in her deposition that although she did not believe that defendant read the document before signing it, she did tell him that he had to sign it "because it was a release form" and that if

he got hurt then "he couldn't come back on us."
She further testified that his response or reaction
to that was his signing of the form. Plaintiff claims
that Tremble did not advise him concerning the
nature of the form, but rather only advised him
that he had to sign it in order to cross the rope.

In light of the fact that this matter was decided
by summary disposition, we must accept plaintiff's
version of events. Even so, rescission is not appro-
priate. Plaintiff claims that no representations
were made of the contents of the document he
signed, making no claim that the contents were
misrepresented. That is, had Tremble handed the
document to plaintiff stating that it was merely a
sign-up form and of no consequence, then, perhaps,
rescission would be appropriate on the basis that
plaintiff's signature on the release form had been
induced by fraudulent misrepresentation. But that
is not the case here.

Viewed in the light most favorable to plaintiff,
the pleadings establish only that no comment was
made by Tremble concerning the nature of the
document and the plaintiff chose to sign it without
reading it. While there was an inducement for him
to sign it because it was a requirement to partici-
pate in the event, there was no inducement for
him to sign it without first reading it. Moreover,
the nature of the document itself does not hinder
the reading or understanding of it. As noted above,
the waiver clause was printed in standard type-
writer-size type in all caps and double-spaced.
While the clause itself may not be a paradigm of
plain English, neither is it so laden with legalese
as to be incomprehensible to anyone but a lawyer.
That is, it is written with sufficient clarity, partic-
ularly in view of the fact that it is captioned
"Waiver of Liability," to put a layman on notice
that any right to bring a claim of liability for

injury or damages arising out of participation in the event was being waived. Accordingly, we conclude that there is no basis for allowing rescission of the waiver of liability on the basis of mutual mistake.

Plaintiff next argues that the document itself constitutes a misrepresentation of the instrument and, therefore, is voidable. Plaintiff's argument in this respect concerns certain alleged deficiencies with the format of the document itself. Specifically, plaintiff argues that the document would lead one to believe that he was only signing a list of names, that there was no date on the document, and that the contract language was not individualized with a formal signature line for each individual, there instead being several signatures after a single statement of the clause waiving liability. We disagree.

First, we are aware of no requirement that individual waivers of liability must be executed by each participant in an event rather than all participants signing the same waiver. With respect to the nature of the form itself, as discussed above, its nature is fairly obvious. Again, the language is written in a fairly straightforward manner, it is printed in normal-size type, all caps, double-spaced, and with the caption "WAIVER OF LIABILITY" at the top. There might be some validity to plaintiff's argument had the document been entitled "Rope Climb Sign-up Sheet" and contained a vague reference advising participants to read the reverse side before signing, with a clause waiving liability being printed on that reverse side in two-point type and written in such legalese that it would take a lawyer several hours to decipher. But that simply is not the case here. The waiver clause involved in this case is at least as clear and

understandable as was the waiver clause at issue in *Paterek.*

Moreover, as the Court in *Paterek* noted, a misrepresentation in this context implies a misrepresentation made with the intent to mislead or deceive. *Id.* at 449. That is, defendants or their agents had to intentionally or fraudulently misrepresent the nature of the document. *Id.* Plaintiff can point to no evidence that indicates any intentional or fraudulent misrepresentation of the nature of the waiver of liability. At worst, Tremble was silent concerning the nature of the document, but the document speaks for itself and is not itself misleading. Certainly no reasonable person could conclude that it was drafted in a manner that reflects an intent to mislead or deceive the participants who signed it. Therefore, we conclude that there was no genuine issue of material fact concerning this issue and that the document itself does not constitute a misrepresentation of the nature of the instrument, and, therefore, the waiver of liability is not voidable on that basis.

For the above reasons, we conclude that the trial court properly granted summary disposition in favor of defendants. In light of this conclusion, we need not address the issues raised by defendants in their cross appeal, namely whether the trial court should have granted summary disposition to defendants on the basis that they owed no duty to plaintiff and that plaintiff's claim is barred by the doctrine of governmental immunity.

Affirmed. Defendants may tax costs.