**BRB PRINTING, INC., a Michigan corporation, and Ben C. Maibach III, Plaintiffs,**

v.

**Vernon G. BUCHANAN, Defendant.**

**Civ. A. No. 93–75204.**

United States District Court, E.D. Michigan, Southern Division.

March 6, 1995.

Thomas W.B. Porter, Joseph K. Erhardt, Dykema, Gossett, Detroit, MI, for plaintiffs.

Lawrence J. Schloss, Mt. Clemens, MI, David L. Steinberg, Bloomfield Hills, MI, for defendant.

## OPINION

FEIKENS, District Judge.

### I. Introduction

Plaintiff Ben C. Maibach III (Maibach) is chief executive officer and principal owner of plaintiff BRB Printing, Inc. (BRB). Plaintiffs are residents of Michigan. Defendant Vernon G. Buchanan (Buchanan), a Florida resident, was formerly chief executive officer of American Speedy Printing Centers (American Speedy). American Speedy provides printing, photocopying and related services to the public.

In the early 1980's American Speedy created the "master franchise program" in which master franchisees would be responsible, within a defined geographic region, for service and support of existing American Speedy franchises and development of new ones. This action arose from events prior to plaintiffs' 1988 purchase of a Mid–Atlantic Region franchise (Regional Franchise or Franchise)[1] master franchise and the resale of that Regional Franchise in 1990.

Plaintiffs allege that during the negotiations to purchase the Regional Franchise defendant orally promised, in his personal capacity, that "[I]f Maibach became dissatisfied at any time with the investment, Maibach would have the right to return the Region and recover the full amount of his investment". Maibach says he asked defendant to place the promise in writing, but defendant said it would cause complications for American Speedy.

The negotiations eventually culminated in an agreement by American Speedy to sell the Franchise to plaintiff BRB. This is memorialized in the Master Franchise Agreement (MFA) dated March 28, 1988 and an addendum to the MFA executed on the same day (Addendum). Defendant did not sign the MFA in his personal capacity. The Addendum is signed by one Howard Berkowitz, Group President–Chief Operating Officer, and by Maibach as Ben Maibach, (sic) III, Chairman of the Board.

During plaintiffs' ownership of the Regional Franchise plaintiffs suffered substantial operating losses. So, in late 1989 Maibach communicated to defendant that he wanted him to honor the alleged oral contract. Defendant refused to accept personal responsibility, however. On May 1, 1990 plaintiffs and American Speedy entered into a repurchase agreement (Agreement). Defendant signed the Agreement as Vernon G. Buchanan, President. Maibach signed as Ben C. Maibach III, individually and on behalf of BRB Printing, Inc. In the Agreement American Speedy assumed debt obligations incurred by plaintiffs of One Million Two Hundred Twenty Thousand ($1,220,000.00), made a cash payment to plaintiffs of Twenty–Five Thousand dollars ($25,000.00) and agreed to additional compensation for plaintiffs. American Speedy did not fully comply with the Agreement because it declared bankruptcy under Chapter 11 on February 3, 1992. Maibach filed a proof of claim against the American Speedy Bankruptcy estate in the amount of Five Hundred Twenty–One Thousand Seven Hundred Ninety–Four dollars and Forty One cents ($521,794.41).

The complaint in this case was filed December 15, 1993. In the complaint plaintiffs allege fraudulent inducement, innocent misrepresentation, breach of an oral contract and promissory estoppel. On November 30, 1994 defendant filed a motion to dismiss. I heard oral argument on that motion December 15, 1994. At this hearing I informed the parties that I intended to treat the motion as a motion for summary judgment under Fed-

1. Maryland, Virginia, West Virginia and parts of New Jersey and Delaware and the District of Columbia.

eral Rule of Civil Procedure (FRCP) 56 and heard additional oral argument under that standard January 26, 1995.

## II. *Law and Analysis*

Plaintiffs' basic allegation, for purposes of this motion, is that defendant orally contracted with plaintiff Maibach that Maibach would have the right to return the Regional Franchise and recover the full amount of his investment if he became dissatisfied with the Franchise. I will treat this allegation in a manner most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[S]ummary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). The thrust of defendant's motion is that even if there was an oral agreement between Maibach and Buchanan, plaintiffs cannot introduce it into evidence due to the following affirmative defenses: (1) the statute of frauds; (2) the parol evidence rule; (3) novation; and (4) release. Because this case is in this court on diversity grounds an examination of Michigan law is necessary to determine whether any of these defenses is viable. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### A. Statute of Frauds

■ The relevant provisions of the Michigan Statute of Frauds,[2] Michigan Compiled Laws (MCL) 566.132, read:

> Sec. 2 (1) In the following cases an agreement, contract and promise is void, unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.

**2.** Titled, Invalidity of certain agreements in absence of a signed writing; actions against financial institutions to enforce certain promises or commitments; definition.

**3.** That clause states in relevant part:

> (b) A special promise to answer for the debt, default or misdoings of another person.

MCL 566.132.

Defendant argues that § 2(1)(a) is applicable to this case because any agreement to repurchase the Regional Franchise could not be performed within one year after the MFA was executed. As evidence of this fact defendant points to ¶ 16 of the Addendum in which American Speedy agreed to remarket plaintiffs' rights if plaintiffs were unhappy at the end of eighteen months.

I do not believe that defendant's alleged promise is within § 2(1)(a). Plaintiff states that Buchanan said he would repurchase the Regional Franchise at any time if plaintiffs became dissatisfied. (See Plaintiffs' complaint at 3). Such an open-ended oral agreement does not, by its terms, indicate that the performance could not occur within a year. American Speedy's promise to remarket the Franchise only after eighteen months does not change the open-ended nature of this alleged promise.

Defendant also contends that the oral agreement is within § 2(1)(b) because Buchanan's promise was actually a promise to pay any debt Maibach incurred. This is an incorrect reading of plaintiffs' complaint. Plaintiffs allege that defendant agreed to repurchase the Franchise and to make Maibach whole. No mention is made of paying any of Maibach's debtors. Thus, the statute of frauds is not applicable in this case.

### B. Parol Evidence Rule

■ Defendant argues that the parol evidence rule mandates summary judgment because section 22 of the MFA contains a clear and unambiguous integration clause.[3] In *Goodwin v. Coe Pontiac,* 392 Mich. 195, 220 N.W.2d 664 (1974), the Michigan Supreme Court stated the parol evidence rule as follows:

> (c) This Agreement and the attached Exhibits constitute the entire agreement of the parties. Any representations, inducements, promises, and agreements, oral or otherwise, not contained herein shall have no force or effect in the construction of the rights and obligations of the parties created hereby....

It is well-established that where a contract is clear and unambiguous, parol evidence of negotiations cannot be admitted to vary the contract.

*Id.* at 204, 220 N.W.2d 664. Plaintiffs argue that the parol evidence rule does not apply because defendant was not a party to the MFA in his personal capacity.

■ If defendant were a party to the contract the parol evidence rule would apply. *New Amsterdam Casualty Co. v. Sokolowski,* 374 Mich. 340, 132 N.W.2d 66 (1965). Generally, a stranger to a contract cannot use the parol evidence rule. *Denha v. Jacob,* 179 Mich.App. 545, 446 N.W.2d 303 (1989). Thus, two issues must be addressed: one, is a president or shareholder of a corporation a stranger to the contract; and two, if so, is a president or shareholder encompassed within the parol evidence rule even if he is a stranger to the contract?

The Michigan Supreme Court confronted these issues in *Sewall v. Feller,* 288 Mich. 107, 284 N.W. 662 (1939). That case pitted Sewall, the purchaser of a store against Feller, a former shareholder and president of the corporation which formally owned the store. *Id.* at 109, 284 N.W. 662. Sewall said that when he was preparing to buy the store he asked defendant to place in the contract a covenant not to compete. *Id.* at 110, 284 N.W. 662. According to testimony, Feller assured him that was unnecessary because he was leaving for California and never returning to Michigan. *Id.* at 111, 284 N.W. 662. Sewall agreed to this oral reassurance and a bill of sale was executed which defendant signed as "Morris Feller, President". *Id.*

Soon thereafter Feller returned to Michigan and began preparations to open a new store. Sewall sued for injunctive relief. *Id.* at 110, 284 N.W. 662. Defendant said that the parol evidence rule precluded allowing the oral contract into evidence because the parties had integrated their entire agreement in the bill of sale. *Id.* at 112, 284 N.W. 662.

The Court stated, "[u]nder these circumstances we do not think that defendant is to be regarded as a party to the instrument within the operation of the parol evidence rule". *Id.* The court also rejected defendant's contention that the parol evidence rule should apply, even if defendant was a stranger to the contract, because it was not clear to the court that the parties' relationship originated in the bill of sale or was founded upon it. *Id.* at 113, 284 N.W. 662. Thus, defendant in the *Sewall* case failed to establish two factors that must be present in order for the parol evidence rule to apply. One, defendant was not a party to the written contract upon which he relied; and two, defendant could not show that the written contract was the final embodiment of the Sewall/Feller relationship.[4]

■ In the present case there is nothing to indicate that defendant was a party to the contract between American Speedy and plaintiffs. Thus, defendant is a stranger to the contract. *Sewall,* 288 Mich. at 112, 284 N.W. 266. In many courts this fact prevents a party from using the parol evidence rule. *Denha,* 179 Mich.App. at 550, 446 N.W.2d 303. Even if I assume defendant can clear this hurdle, I cannot assume that the MFA, which did not mention Buchanan in his personal capacity, embodied the final agreement between Maibach and Buchanan. To make such a determination I would have to violate a basic tenet of summary judgment, which states that when analyzing a summary judgment motion the court must do it in a manner most favorable to the non-movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *National Bank of Detroit v. Shelden,* 730 F.2d 421, 423 (6th Cir.1984). The parol evidence rule does not mandate summary judgment in this case.

### C. Novation

■ Defendant argues that the Agreement constituted a novation. To prove a novation a party must show the following:

(1) parties capable of contracting;

(2) a valid prior obligation to be displaced;

4. These factors may be listed as exceptions to the parol evidence rule. *Goodwin v. Coe,* 392 Mich. at 204, 220 N.W.2d 664.

(3) the consent of all parties to the substitution based upon sufficient consideration;

(4) the extinction of the old obligation and the creation of a valid new one.

*Leila Hosp. & Center v. Xonics Medical Sys.,* 948 F.2d 271, 274 (6th Cir.1991). Consent of the parties may be implied by the circumstances of the transaction, *In re Yeager Bridge Co.,* 150 Mich.App. 386, 410, 389 N.W.2d 99 (1986), but there must be some proof that the parties intended a novation to occur. *Gorman v. Butzel,* 272 Mich. 525, 262 N.W. 302 (1935); *Devitt v. Quirk,* 105 Mich. App. 94, 97, 306 N.W.2d 405 (1981).

In *Gorman* the Michigan Supreme Court said that delay in instituting litigation is evidence of a novation. *Id.,* 272 Mich. at 529, 262 N.W. 302. The court also recognized additional factors which led to the conclusion that a novation occurred. These included an assignment from defendant to a third-party, *id.* at 527, 262 N.W. 302, and another contract which did not mention defendant and provided for disposition of the property in a manner that rendered impossible a conveyance that was consistent with the terms of the original contract. *Id.* at 531, 262 N.W. 302.

■ In this case plaintiffs allege that defendant agreed to make Maibach whole if he became dissatisfied with his investment. This alleged contract was not explicitly novated by the Agreement, so defendant must show an intent to novate from the surrounding circumstances. *Gorman,* 272 Mich. at 529, 262 N.W. 302. There is no evidence that plaintiffs acted in a manner that made it impossible to perform the alleged oral contract or that plaintiffs gave up rights given them by defendant. Defendant's only evidence of intent to novate the alleged oral contract is plaintiffs' failure to institute litigation for three years subsequent to the Agreement. This fact, standing alone, is not enough evidence of intent to prove a novation. *Id.* at 531, 262 N.W. 302; *Leila Hosp.,* 948 F.2d at 274. In addition, some facts may weigh in favor of plaintiffs when analyzing this issue and raise issues of fact which make summary judgment inappropriate. *National Bank of Detroit,* 730 F.2d at 423.

## D. Release

■ Defendant's final argument is aimed at plaintiffs' tort claims under the alleged oral contract. Defendant points to ¶ 5 of the Agreement which contains a release. That paragraph provides:

> [Y]ou, BRB and American Speedy agree to mutually release each other from any and all claims, costs, expenses and damages of every kind or character arising out of the negotiation and sale of the Region from American Speedy to BRB, the negotiation and execution of the Master Franchise Agreement or any of the Notes referred to herein, the parties (sic) performance pursuant to the Master Franchise Agreement or any other written or oral promises or commitments of performance, or the parties (sic) relationship otherwise relative to the Region.

Paragraph 5, Repurchase Agreement (Defendant's exhibit 2).

■ A release is "the giving up or abandoning of a claim or right to the person against whom the claim exists ...". 66 Am. Jur.2d Releases § 1 (1973). In Michigan a release is analyzed as a contract between parties from which the court will effectuate the parties' intent. *Hungerman v. McCord Gasket,* 189 Mich.App. 675, 677, 473 N.W.2d 720 (1991); *Dombrowski v. City of Omer,* 199 Mich.App. 705, 707, 502 N.W.2d 707 (1993). A court should construe a written contract "according to the intentions therein expressed, when the intentions are clear on the face of the instrument". *Birchcrest Bldg. Co. v. Plaskove,* 369 Mich. 631, 120 N.W.2d 819 (1963) (emphasis omitted).

In this case defendant argues that plaintiffs' claim is based on the principle of respondeat superior. In so doing, defendant cites numerous cases which state that "a release of a servant operates to release the master and vice versa". *Rzepka v. Michael,* 171 Mich.App. 748, 431 N.W.2d 441 (1988). Defendant misconstrues plaintiffs' complaint. Plaintiffs claim that defendant committed fraud. They do not claim that American Speedy is ultimately responsible for this fraud or that defendant is responsible for any

actions taken by American Speedy. Thus, laws pertaining to principles of respondeat superior or vicarious liability are not applicable. Instead, I must decide whether the release was intended to apply to defendant. *Dombrowski,* 199 Mich.App. at 707, 502 N.W.2d 707.

It is clear to me, from the face of the contract, that the parties did not intend to include defendant in the terms of the release. There is no language that could be construed as applying to any party other than BRB and American Speedy. *Dombrowski,* 199 Mich. App. at 707, 502 N.W.2d 707. Although one party, or both, may have intended to include Buchanan in this release, I will not attempt to ascertain the actual mental processes of the parties when construing this contract. *Birchcrest,* 369 Mich. at 637, 120 N.W.2d 819. For these reasons I find that the release in the Agreement does not free defendant of liability.

### Conclusion

Accordingly Defendant's motion for summary judgment is DENIED and a trial date will be set. IT IS SO ORDERED.